## HANNAN VS. TOWERS.

APPEAL from a decree of the Court of Chancery. The bill, filed by the present appellee, stated that she is the sister of the defendant, *Hannan,* (now appellant,) and before her intermarriage with *J. Towers,* who is now dead, lived with the defendant for several years, and rendered him valuable services by attending to his family concerns, and superintending his domestic affairs. That in 1792 she intermarried with *J. Towers.* That the defendant, with a view of remunerating her for her services, agreed to grant and convey to her husband and herself, for their lives, a lot and dwelling-house in the city of *Baltimore,* situate in *Albemarle*-street, being part of lot number 326, and in evidence of the contract. executed and delivered the following instrument of writing, viz. "To all people to whom these presents shall come, greeting. *John Hannan* do send greeting. Know ye, that I the said *John Hannan,* of *Baltimore-town,* in the state of *Maryland,* do give and grant unto *John* and *Eliza Towers,* a dwelling-house and lot in *Albemarle*-street, being part of lot number three hundred and twenty-six, containing twenty feet in front and forty feet in depth, of which, before the signing of these presents, I have delivered to *Eliza Towers* an inventory signed with my own hand, and bearing even date. To have and to hold the said premises, or dwelling-house, during the lives of the said *John* and *Eliza Towers,* from henceforth absolutely, without any manner of condition. In witness whereof I have hereunto set my hand and seal this fourth day of June, in the year of our Lord one thousand seven hundred and ninety-three.

Signed, sealed and delivered, in the presence of *James Hannan,* *John Hannan,* [L S.] *Michael Hannan*"

The bill also stated, that the defendant, in pursuance of the contract, put *J. Towers,* and the complainant his wife, in possession of the house and lot. That they expended a considerable sum of money in repairing and enlarging the house, by adding another story to it. That they continued in possession until the death of *J. Towers,* and the complainant continued in possession until 1800. That in 1797, after the death of *J. Towers,* the defendant brought an ejectment against the complainant for the house

*1810.*
**DECEMBER.**

Hannan
vs
Towers

Where a grant being made to J T, and E his wife, of a lot of ground, to have and to hold the said premises during the lives of the said J and E T—*Held,* that a joint estate vested in them during their lives; and that the quality of survivorship being incident to a joint estate, or joint tenancy, without any technical or other words being necessary to confer that quality, the whole devolved on E, the survivor, during her life.

1810.

Hannan
vs
Towers

and lot, and obtained judgment, and in 1800 executed a writ of possession, and turned the complainant out of possession of the house and lot, and still holds the same, and appropriates the profits to his own use and benefit. *Prayer,* to be reinstated in possession, and that the defendant account for the profits thereof, and convey unto the complainant a legal estate in the premises for her life, and for other relief, &c. The *answer* of the defendant states, that the instrument of writing was wholly voluntary and gratuitous, and without any consideration. That some time after the marriage of the complainant with *Towers,* who was a sea faring man, &c. he was prevailed upon, in order to give him the appearance of a permanent residence in *Baltimore,* and thereby give him a greater probability of getting employ from that port, to put him in possession of the house, and did give him some written instrument, but whether the same refers to the complainant he knows not, because the same, though referred to in the bill, is not exhibited, &c. He denies any contract which can give her any interest in the property, but if there be one it must be produced and proved. Commissions issued, and testimony was taken and returned, and the case argued and submitted to the chancellor.

KILTY, Chancellor, (27th of April 1807.) The object of the bill is to compel the defendant to convey to the complainant a legal estate in the lot therein mentioned, which had been conveyed to her, and her husband, who is since dead, by the instrument of writing exhibited. One of the grounds of defence is, that the above deed, if it had been acknowledged and recorded, would have been a lease for their joint lives, and that the estate would have ceased upon the death of either, on account of there being no words of survivorship. The chancellor considers it a sufficient reason to induce him to request the opinion of the chief judge of the third judicial district, as provided for by law. He therefore requests judge *Chase* to express in writing his opinion, whether the above deed, if it had been acknowledged and recorded according to law, would have created an estate on the joint lives of *John* and *Eliza Towers,* which would have ceased upon the death of either on account of their being no words of survivorship? Or, whether it would have created an estate in joint tenancy, which would have sur-

1810.

Hannah
vs
Towers

vived to the longest liver, and of course whether *Eliza Towers*, (no severance of the joint tenancy appearing,) would on the death of the said *John Towers* be entitled to the said lot for her life?

CHASE, Ch. J. gave the following opinion in writing: The grant being unto *John* and *Eliza Towers*, to have and to hold the premises or dwelling-house during the lives of the said *John* and *Eliza Towers*, I am of opinion, that a joint estate vested in *John* and *Eliza Towers* during their lives, and the quality of survivorship being incident to a joint estate, or joint tenancy, without any technical or other words being necessary to confer that quality. I am also of opinion, that the whole devolved on the survivor during her life, according to the case as stated by the honourable chancellor.

*Kilty*, Chancellor. This point being thus determined by the chief judge, which, if the law had been otherwise would have made an end of the case, the other points are to be considered. The chancellor has examined the case, and the result of his examination is, that the complainant is entitled to the relief which she prays.

The remaining ground of defence set up by the answer is, that the instrument of writing, given to the complainant, was wholly voluntary and gratuitous, and without any consideration.

It is certainly laid down as a principle, that a court of equity does not decree specifically without a consideration, or that it will not carry into execution a voluntary deed without either a valuable or meritorious consideration. It will not be necessary in the present case to depart from this principle, however questionable it may be, when applied to instruments solemnly executed and delivered; but an inquiry into the grounds of it may not be improper.

The maxim of the civil law, *quod ex nudo pacto non oritur actio*, has given rise to the principle above stated, and to the position in support of it, that putting a *nude* contract into writing, even when under seal, will not supply the want of consideration, which is stated by *Powell* to be an essential defect in a contract by the civil law. But in the opinion given by Justice *Wilmot*, in *Pillans vs. Mierop*, 3 *Burr.* 1670, (tho' contradicted by the judges in the case of *Rann* and *Hughes*,) he stated, that "there was no

radical defect in the contract for want of consideration, but it was made requisite, in order to put people upon attention and reflection, and therefore, if by stipulation or writing, it was good without consideration." The reasoning of *Powell* to the contrary does not appear satisfactory. It is, that "when the maxim was adopted and received into our system, it was accepted in its full extent; our law not recognizing any ceremonies analogous to a stipulation, which seems to have been, not the creation, but the ratification of a a promise or contract in form before a magistrate." But inasmuch as the putting a contract into writing, with the sealing and delivery, are stronger evidence of deliberation than the stipulation of the civil law, it would seem reasonable to give to those solemnities the same effect of preventing contracts from being made, and without consideration; and the words cited by Justice *Wilmot* from *Plowden* are to this effect—"The delivery of the deed is a ceremony in law signifying fully his good will that the thing in the deed should pass from him who made the deed to the other." *Powell*, in reply to the observation of *Blackstone*, "that the rule as to *nudum pactum* does not hold in some cases, where a promise is authentically proved by written documents, as of a voluntary bond or note of hand," remarks, that "the former turns on the ground that it is an instrument under seal and delivered, which binds the parties, and alters the property, though there be no consideration;" that "the latter is of a distinct species; and that as long as a note of hand is confined to the parties who fabricate it, the want of consideration is a clear bar to recovering any thing upon it, upon the ground that it is *nudum pactum*." But the law only permits the defendant, (not being estopped by deed,) to inquire into the consideration of the note, and the burthen of proof lies on him, and not on the plaintiff, the note being *prima facie* evidence of his claim. *Powell*, in the preceding part of the same chapter observes, that "where a contract or agreement is by deed, the cause or consideration is not inquirable into in an action upon it; for every deed importing in itself a consideration, namely, the will of him who made it, a contract or agreement, where either of them is by deed, is never considered as *nudum pactum*." It appears to be strange, that whilst courts of law not only give their validity to sealed instruments, but in every possible case exercise an equitable

jurisdiction for the attainment of justice, courts of equity should be studious to find cases in which they may avoid giving relief. Admitting it to be discretionary with courts of equity to decree the specific performance of agreements, yet they ought to pay that deference to the solemnity of deeds, as to intend them the acts of reasonable men, and arising from a good consideration, unless the contrary be proved. And where no consideration on the face of the deed, it should not on that account be deemed merely voluntary; but it should be incumbent on the grantor to prove any circumstances of fraud, unreasonableness or surprise, in order to show that a specific performance would be unjust.

But the present case, (in addition to the important circumstance of its being against the grantor himself, and there being no creditor, or other person concerned,) is not a bare voluntary agreement without a consideration expressed or implied. And the chancellor considers the following as established principles, to wit: That a consideration may be averred and resorted to without being expressed in the deed; and that to avoid the rule, it has been laid down, that any consideration, however small, will be sufficient, a court of equity being willing to lay hold of any just ground to uphold an agreement.

There is in the first place a *good* consideration as against the defendant, or even his heirs, if he was not living—that of blood or natural love and affection, which, though not expressed in the deed, appears to have existed, from the bill, the answer and the evidence, the complainant being the defendant's sister. The service rendered to him by the complainant as a house-keeper, as proved by the depositions, without a strict examination of the value of it, is a *valuable* consideration, so far at least as to come in aid of this deed; and even the reason assigned by the defendant himself, to wit, the giving Captain *Towers* the appearance of a permanent residence, and thereby giving him a greater probability of getting employ, may (as tending to his sister's support,) be viewed as a sufficient consideration to show that the deed was not merely voluntary, and may also show, what indeed is sufficiently manifest without it, that there was no fraud or surprise on the defendant in obtaining the deed. After the usual expressions in the grant, it contains the following: "of which, before signing,

1810.
Hannum
vs
Towers

I have delivered to *Eliza Towers* an inventory, signed with my own hand, and bearing even date." And it appears that possession was given and held until the complainant, after the death of her husband, was turned out of possession; in consequence of the judgment in the ejectment; and this possession would have been sufficient to take the case out of the statute of frauds, if the agreement or lease had been by parol, and to oblige the defendant to execute a lease accordingly.

With regard to the improvements, it is believed that those which are proved in this case would have been sufficient to procure a decree for a lease if they had been made only on a promise of one, and this on the ground, that the lease was in part executed, and that the lessor should not take advantage of his own fraud to run away with the improvements made by another. And *à fortiori*, they ought to be considered in favour of the complainant, when made after the execution of the lease, and after possession under it, and not only with the knowledge of the defendant, but by his labour as a workman employed by the grantee, Captain *Towers*.

From the opinion of the chief judge of the third judicial district, it follows, that the title of the surviving lessee is equal to that held by both, and therefore, if the defendant is now right in his pretensions, he might at any time have brought his ejectment, and have taken possession as soon as the improvements were made. Captain *Towers* might have ceased to sail from the port of *Baltimore*, if he had continued alive, and thereby have furnished a pretence as solid as the one now set up. But no person is at liberty so to release himself from his engagements; and in a case less strong than the present, (*Villers vs. Beaumont*, 1 *Vernon*, 100,) the chancellor uses these expressions: "If a man will improvidently bind himself up by a voluntary deed, and not reserve a liberty to himself by a power of revocation, this court will not loose the fetters he hath put upon himself; but he must lie down under his own folly; for if you would relieve in such a case, you must consequently establish this proposition, viz. That a man can make no voluntary disposition of his estate but by will, which would be absurd."

If the principles of equity herein stated are (as the chancellor supposes,) sufficient to bear out the complainant,

there can be no apprehension of hardship on the defendant, on considering the nature of the claim, and the defence set up, which is not of a nature to be countenanced by this court. *Decreed,* as to that part of the bill praying for a conveyance, that the defendant do, by a good and sufficient deed, executed, delivered and acknowledged, according to law, convey to the complainant the premises in the proceedings mentioned, to wit, &c. with all and singular the appurtenances and privileges thereto belonging. To have and to hold the same from the day of the date of this decree, for and during the term of the natural life of the complainant. *Decreed* also, that the complainant have the possession of the house and lot with, &c. Also *Decreed,* as to the part of the bill praying for an account, that the defendant account with the complainant for the rents and profits of the lot, during the time of his possession thereof under the judgment in the ejectment; and that an account be taken by the auditor, &c. From this decree the defendant appealed to this court.

The cause was argued before POLK, BUCHANAN, and GANTT, J.

*Martin,* for the Appellant, contended, that the contract ceased on the death of *John Towers;* and if it did not, that being a voluntary contract, a court of equity could not enforce it. That the contract was made to a man and his wife, and there were no words of survivorship; and it was clear that there was no survivorship in the case of a grant to a man and his wife, as they could not hold as joint tenants. He cited 3 *Bac. Ab.* tit. *Joint Tenants and Tenants in Common,* (G) 685, (J) 691:

*Johnson,* (Attorney General,) and *W. Dorsey,* for the Appellee, cited *Co. Litt.* 180, a, s. 277. *Ibid* 182, a, s. 283. *Ibid* 113, a, (note.) *Ibid* 181, b. 2 *Blk. Com.* 180, 181; and *Pow. on Dev.* 303.

DECREE AFFIRMED.

POLK, J. dissented.