1818.

Woods
vs
Fulton & Starck

---

WOODS, *et al.* vs. FULTON and STARCK.

JUNE.

APPEAL from the Court of Chancery. The bill in this case was filed by the complainants, (now appellees,) against the administrator and representatives of *J. M. Dennison,* to obtain a decree for the sale of a house and lot in the city of *Baltimore,* alleged to have been mortgaged to them by *J. M. Dennison,* in his life-time, to satisfy a debt due from *Dennison* and his partner, *Thomas L. Savin.* The substance of the case, as disclosed by the record, is this— *Dennison & Savin* were partners in trade in *Baltimore*; as were also the complainants. They agreed mutually to endorse for each other, to obtain discounts from the banks; and at the same time agreed mutually to secure each other, and for this purpose *Dennison* made a mortgage of the premises in question to the complainants; and *Fulton,* one of the complainants, made a mortgage of a house and lot he held in *Baltimore* to *Dennison* & *Savin.* These transactions took place about the 31st of July 1811. Each party reciprocally endorsed for the other to a considerable extent; and finally, upon the death of *Dennison,* which happened in August 1813, the complainants took up the paper they had endorsed and loaned to *Dennison & Savin,* to the amount of $4462 75. *William Woods & Westly Woods,* were also partners in trade, under the firm of *William Woods & Son,* and had also loaned and endorsed for *Dennison & Savin* to a sum exceeding $3000, to secure which *Dennison* had agreed to mortgage the aforesaid house and lot, and had given directions to prepare a mortgage to that effect a short time before his death, but he was taken ill and died before he could execute it. Neither the mortgage from *Dennison* to the complainants nor from *Fulton*

D in 1811, executed a mortgage of certain leasehold property to F, to secure him as an endorser of certain promissory notes, and which F, on the death of D, was compelled to pay. The mortgage was not recorded, from neglect, and not from any fraudulent intention. F filed a bill in chancery against the administrator and representatives of D, to obtain a decree for a sale of the premises to satisfy the amount paid by F—*Decreed,* that the property be sold, &c. On appeal—*Held,* that the question, whether the mortgage was fraudulent with reference to the creditors of D, did not arise, as the answers did not state the insufficiency of the estate of D to satisfy his creditors, and to that point there was no proof —And *quere* as to the true construction of the *eleventh* section of the act of 1785, *ch.* 72; and how far the defendant could call to his aid the provisions of that act in a case where the complainant does not seek to record his mortgage, but claims relief under that branch of equitable jurisdiction, which enforces contracts made *bona fide,* and for a valuable consideration?

1818.

Woods
vs
Fulton & Starck

to *Dennison & Savin*, were recorded. It was alleged by the complainants that this was the result of forgetfulness and inattention, and proceeded from no fraudulent intention. It was also alleged by the defendants, that it was mutually agreed, at the time of executing the mortgages, that they should not record them. *Dennison* died intestate, leaving a daughter, *Sarah*, the wife of *T. L. Savin*, and a son named *Marcus*. *Woods* was the administrator of *Dennison*, and contended that the complainants were only entitled to come in *pari passu* with the other creditors. The mortgage premises were leasehold.

KILTY, Chancellor, (July term 1816,) decreed, that the premises mentioned in the mortgage from *Dennison* to the complainants should be sold to satisfy the debt due to them. From that decree the defendants appealed to this court.

The cause was argued before BUCHANAN, JOHNSON, MARTIN, and DORSEY, J.

*Winder*, for the Appellants. The mortgage was not recorded, and the bill prayed for a sale of the mortgaged premises. The chancellor, without directing the mortgage to be recorded, decreed a sale of the property to pay the debt, to secure the payment of which it was executed. The only ground on which the complainants could come into a court of chancery was under the act of 1785, ch. 72, s. 11, to have the mortgage deed recorded. A fraud was committed on the creditors of *Dennison*, and of *Dennison & Savin*, by withholding the mortgage from record.

*Martin*, (Attorney General,) and *Pinkney*, for the Appellees. The only question is, whether, though the deed was not recorded, the complainants have not such an equitable lien on the property against the heirs of *Dennison* as to be entitled to have it applied to the payment of their debt? By the general law of the court of chancery, previously to the year 1785, this mortgage would be considered a contract in equity which the court could decree upon on equitable grounds, as a particular lien. The court would have viewed it as a mortgage of a particular debtor, and liable to every equity to which the mortgagor would be liable. Here the mortgage not being recorded, was not owing to any fraudulent intention. It was not incumbent on the complainants to prove that there was no fraud, because none was alleged in the answers. Is the mortgage not on a meritorious consideration, and the peculiar favourite of the court of chancery? But it is said the complainants have lost the effect of their mortgage in a court of equity, because it was not recorded. The mortgage not being recorded is not valid in point of law. How is the defect to be supplied, but by the court of chancery, which will give efficacy to it, and can do so by considering it as a contract. Every mortgage is a contract, even without cove-

1818.

Smith
v.
Baldwin

nants, but here there are covenants. It is a mere agreement, and as such a court of equity can carry it into effect. The act of 1785 does not interfere with the general powers of the court of chancery, or to any exclusive equity which it possessed before. It only restricts the particular case legislated upon by the act. To show what was the powers of the court of chancery in a case similar to the present, and the nature of special liens, they referred to *Pow. on Mortg.* 460, 469. *Burn vs. Burn*, 3 *Ves.* 573. Notice to general creditors was not necessary. *Pow. on Mortg.* 585, 586. There is no allegation in the bill or answers that *Dennison & Savin* were insolvent, or that *Dennison* was insolvent. The creditors are not, therefore, made parties, and cannot be affected by this decree. The bill and prayer in it are that the particular piece of property mortgaged should be made liable to pay the particular debt.

*Winder*, in reply, referred to 1 *Madd. Chan.* 329. *Lloyd vs. Collett*, 4 *Bro. Ch. Rep.* 469; and S. C. 1 *Atk.* 12, *(note.)*

DORSEY, J. delivered the opinion of the court. It has been contended on the part of the appellants, that the decree of the chancellor ought to be reversed, as the mortgage from *Dennison* to the appellees was fraudulent, with reference to the creditors of *Dennison*, and *Dennison & Savin*; and the *eleventh* section of the act of 1785, *ch.* 72, has been relied on to establish this position. As the answers do not state the insufficiency of the estate of *Dennison* to satisfy his creditors, or the insolvency of the firm of *Dennison & Savin*, (and to those points there is no proof in the cause,) the question of fraud, with reference to creditors, does not arise in the cause. This view of the case renders it unnecessary for the court to decide on the true construction of the statute referred to, or to give any opinion on the question, how far the defendant could call to his aid the provisions of the said statute, in a case where the complainant does not seek to record his mortgage, but claims relief under that branch of equitable jurisdiction, which enforces contracts made *bona fide*, and for a valuable consideration.

DECREE AFFIRMED.