JOHN SULLIVAN ET AL.
vs.                                     JULY TERM, 1847.
TUCK, EX'R OF BOWIE.

[SPECIFIC PERFORMANCE—LIEN ON GROWING CROPS—REMEDY AT LAW—DAMAGES.]

THE defendant's testator entered into a contract with the complainants by which they were to become his agents for the sale of his crops, advance him money and accept his drafts, for the payment of which he pledged his crops on hand, and the growing crops of the year 1847. Upon the faith of this agreement, complainants made large advances to testator, and at the time of his death, which occured in January, 1848, he was largely indebted to them. Upon a bill, by complainants, claiming a *lien* on the corn and tobacco in hand, and on the crop of wheat sown in the fall of 1847, and to enforce the specific performance of this contract, it was HELD—

That this was a positive agreement on the part of the testator to send to complainants, to cover their advances to him, his crops of wheat, tobacco and corn, which would be marketable in the year 1847 ; and also, the wheat crop seeded in that year. And that this court would enforce its specific execution.

That the *lien* founded on the relation of the parties, as factor and principal, would not apply to this case ; that lien being merely the right to *retain* a thing, of which the party retaining must have either the actual or constructive possession. The plaintiffs' title to relief, therefore, depends upon the contract established by the letters of the testator, and the facts appearing by the pleadings.

Courts of equity do not enforce the specific performance of contracts relating to personal property, with the same facility and universality as those relating to real estate : because, in the former case, courts of law usually afford a complete remedy.

But whenever a violation of the contract cannot be correctly estimated in damages, or wherever, from the nature of the contract, a specific performance is indispensable to justice, a court of equity will not be deterred from interfering, because personal property is the subject of the agreement.

The expenses in getting the crops ready for market should be paid out of the proceeds of sale.

[This bill was filed for the specific performance of a contract entered into by the defendant's testator, Robert W. Bowie, of Prince George's county, with the complainants, trading under the firm of John Sullivan and Sons, in Baltimore. The complainants agreed to become the agents of the deceased for the sale of his crops; to advance money, and to accept his drafts,

to secure the payment of which the deceased pledged his crops then on hand, and the growing crops of the year 1847, and died in January, 1848. Large advances were made by the complainants on the faith of this arrangement, to cover which, the produce received by them at the time of his death was greatly insufficient, leaving due $2782. The defendant took out letters testamentary, and possessed himself of the corn and tobacco crops of the year 1847, which were still on hand. The complainants contended, that, by virtue of this contract, they were entitled to a *lien* on the crops then in the hands of the defendant, as well as on the wheat crop sown in the fall of the year 1847. The evidence of the contract consisted principally of letters written by the deceased to the complainants, in the latter part of the year 1847, wherein he pledged himself to indemnify the latter for their advances and liabilities made and incurred for him, by forwarding to them his growing crops of that year, which they were to sell, and retain out of the proceeds sufficient to satisfy the debt due to them. The whole claim was resisted on the ground that the complainants were in no better condition as to the crops than other creditors of the deceased, and it was insisted that in no event could it include the wheat crop seeded in the year 1847, as the only crops, the growth of that year which had come into the defendant's hands, were the corn and tobacco. It was also urged, that the lien of the complainants, if they had any, should be subject to the expenses incurred in getting the crops to market. It was stated, however, in the course of the argument by the solicitors, that on the principles of law applicable to the case being settled by the court, there would be no difficulty in adjusting the terms of the decree by agreement.

The Chancellor thought, that the facts of the case showed a positive engagement on the part of the deceased to send to the complainants, for the purpose of covering their advances to him his crops of wheat, tobacco and corn, which would be marketable in the year 1847, as well as the wheat crop seeded in that year. And as to the question whether the complainants had a standing in court to enforce a specific execution of the agreement, he said :]

THE CHANCELLOR:

If the case is to be governed by the principles applicable to the relation of factor and principal, I am satisfied the complainants cannot succeed, as the lien resulting by operation of law, from that relation, cannot be extended to property situated as this was, at the period of the death of Mr. Bowie. If at that time the property had been in the hands of these parties, I incline to think, that, independently of contract, and looking alone to the rights resulting from the usages of trade, the complainants would have been entitled to retain it, not only for the charges and advances connected with the disposition of this identical property, but for the general balance due the complainants, growing out of other dealings of the like nature. *Story on Agency, sec.* 354.

But as this property was not, either actually or constructively, in possession of these complainants, when the testator died, the lien founded upon the relation of the parties as factor and principal, cannot be maintained ; that lien being merely a right to *retain* a thing, of which the party retaining, must of course be in possession, it being impossible to predicate the right to retain that of which the party has not the actual or constructive possession. *Story, sec.* 361.

The plaintiffs' title to relief, then, must depend, not upon the mere operation of law, independently of contract, but upon the contract of the parties, as shown by the letters, and the facts appearing by the pleadings.

It is very evident to me, from a perusal of these, that Mr. Bowie did not ask or desire, nor did the complainants intend to make the advances in cash, and accept his drafts upon his general credit—on the contrary, it is perfectly manifest, that all the transactions between them, were founded upon the express promise on the part of Mr. Bowie, to send them his produce, then in his hands, or growing, or to become available in 1848. There is nothing in his letters from which it is possible to come to a different conclusion, and I am therefore entirely satisfied, if I refuse the relief asked by this bill, I defeat the clear design and intention of the contracting parties.

6

It is to be borne in mind, also, that this is not a contest between these complainants, and the creditors of Mr. Bowie, but between them and his personal representative, and looking to the answers, it is reasonable to conclude, that whatever the result of this cause may be, the creditors cannot be prejudiced, the answer expressing the belief, that the assets real and personal will be sufficient to pay the claims of all the creditors— at all events, as it does not appear that the estate of Bowie is insufficient to pay his debts, the rights of his creditors are not supposed to be involved. *Woods et al.* vs. *Fulton and Starck*, 4 *H. & J.*, 329.

The question then is, will not the court as between these parties, specifically execute this contract?

In the case of *Alexander* vs. *Ghiselin*, decided by the Court of Appeals in December last, it was said, that "it would be novel doctrine in Maryland, to assert that the Chancery Court cannot specifically execute a contract for a mortgage or other equitable lien, against creditors"—and surely if it would be novel and untenable so to maintain as against creditors, how much more singular and untenable would it be to assert, that the court cannot do the same thing, as against the party himself, who made the contract!

Even where such contracts rest in parol, cases are not wanting in which the courts, with regard to personal property, have decreed their execution. A number of such cases are referred to in the opinion delivered by the Court of Appeals in the case already mentioned.

The case of *McMechen* vs. *Maggs*, 4 *H. & J.*, 432, shows the great extent to which the courts will go, to enforce these parol agreements for mortgages of personal property, even as against subsequent encumbrancers, and this case is cited with approbation in *Alexander* vs. *Ghiselin*. But it is said, that here is no contract for a mortgage, or other equitable lien, on this property ; it being, as insisted by the defendant's counsel, no more than the usual engagement between principal and factor, for advances by the latter on property to be consigned him for sale by the former.

It is true, the testator did not say, if you will pay me or to my order, certain sums of money, I will give you a mortgage on my produce ; but he did say, if you will do so, I will send you the produce for sale for your security and reimbursement, and the advances were made and the drafts accepted, upon the faith of that promise—and these declarations and promises were made in writing, so as to relieve the case from the operation of the statute of frauds, even if the statute was relied upon, which it is not.

I am aware of no principle which denies to this court the power to enforce specifically this contract.

That contracts respecting personal property are not specifically enforced by courts of equity, with the same facility and universality as contracts in relation to real estate, is true, but this is not on account of their personal nature, but because the courts of law in such cases, are generally competent to afford a complete remedy. 2 *Story, Equity, sec.* 717.

But when the circumstances of the case are such that compensation in damages, will not give the party a complete and satisfactory remedy, then, though the contract relates to personal estate, a court of equity will interpose, and grant relief. *Ibid sec.* 718.

In this case, I am of opinion it would be impossible, or at all events extremely difficult, for a court of law to give these complainants adequate damages, that is, to determine and measure the amount of damages they have sustained, or may sustain, by the omission to send them the produce in question, in fulfilment of the contract. If the personal estate of Mr. Bowie is insolvent, as seems to be conceded, then the plaintiffs could only recover in their action at law their proportion of the assets, and when this should be done, they would have to go into equity to be paid the balance, out of the real estate.

But this is not the only difficulty to the recovery of a perfect pecuniary compensation at law for the breach of this contract, and as appears by the cases, unless this can be done, courts of equity interfere as readily when the contract affects personal as real estate. *Story's Equity, sec.* 717

If in this case the plaintiffs should bring their action at law, for money lent and advanced or paid, laid out and expended, for the use of the defendant's testator, they would recover the amount which, upon the evidence, they could show they had so lent and advanced or expended. That would be the measure of damages. But if the action was brought upon the special contract, to send the produce of defendant's testator to the plaintiffs for sale, as his factors, to secure and reimburse them for advances made in consideration of his promise to do so, the measure of damages for the failure to send would be the amount which the property would have commanded in the market, at the time stipulated in the contract.

Now this would have been an inquiry attended with some difficulty, especially as the contract does not fix the precise period, when the crops were to have been sent forward. The language of the letter of the eighth of November, 1847, is, "my crops to go into your hands in the spring, and during the next year." The value of the crops would of course have depended upon their quantity and quality which must have been ascertained by evidence not easily accessible to the parties, and then the amount for which they would have sold, must have been determined by the market price, at the time fixed for their delivery, and as no definite time was fixed for that purpose, it is not very clearly seen, how a proper standard for measuring the damages, could have been arrived at.

Besides, in an action upon the special contract, the plaintiffs would have been entitled to recover by way of damages for the commissions which they would have earned upon the sale of the property, thus complicating, by an additional item, the elements out of which the verdict of the jury must have been constituted.

Wherever a violation of the contract cannot be correctly estimated in damages, and the calculation is to proceed upon conjecture, or wherever from the nature of the contract, a specific performance is indispensable to justice, this court will not be deterred from interfering, because personal property is the subject of the agreement. *Adderly* vs. *Dixon*, 1 *Sim. & Stu.*, 607 ; *Buxton* vs. *Lister*, 3 *Atk.* 383.

And as from a careful consideration of this contract it appears to me, a court of law would not be able to furnish a complete and satisfactory remedy, I think a specific execution of the agreement should be decreed.

It is stated in the answer of the defendant, that expenses have necessarily been incurred by him in getting the crops ready for market, and he insists that if the complainants shall be adjudged entitled to the relief they seek, those expenses should be paid out of the proceeds of the sales.

My first impression was against this position, but upon reflection it seems to me to be well taken. It was his duty to complete and take care of the crop, for which purpose he might employ the necessary agents—*Lee* vs. *Lee and Welch* 6 *G. & J.*, 316—and I can see no good reason why the expenses incurred by the executor in the discharge of this necessary duty, shall not be deducted from the proceeds of the crops, when sold, like the freight which must be paid upon the transportation to market. In case the growing crops were the only assets in the hands of an executor, which is a state of things which might happen, it is obvious the expenses in question must be paid out of them, or not paid at all.

I think, therefore, the expenses incurred by the defendant, as the executor of Mr. Bowie in getting these crops ready for market, should be paid out of the proceeds of the sales.

There is a small item in the complainants' account, for commissions on advances, which as it formed no part of the consideration upon which the promise of the deceased was made, cannot be regarded as a special charge upon the crops. In respect of that item, if established, the complainants can only be considered as general creditors, upon a footing with others.

A decree was passed by agreement in accordance with the foregoing opinion, and allowing the complainants their costs to be paid out of the general assets of the estate of the testator.

—

[No appeal was taken from this decree.]