Filed July 28, 1908.

JUDSON D. HEWITT
VS.
MARY C. HEWITT.

*Howard M. Emmons* for plaintiff.
*C. Alex. Fairbank, Jr.,* for exceptants.

GORTER, J.—

The bill in this case was filed on July 6, 1907, by the plaintiff, Judson D. Hewitt, against the defendant, Mary C. Hewitt, a lunatic, alleging that he is entitled to an undivided moiety in the leasehold interest in certain property situated on the east side of Carrollton avenue, consisting of a dwelling and lot 13x42 feet, subject to a yearly ground rent of $26, and that the defendant is entitled to the other undivided moiety. The bill further states that the plaintiff desires to hold his interest in said property in severalty and not in common, and inasmuch as said property is not susceptible of partition without material loss and injury to the parties in interest, he prays that said property may be decreed to be sold.

The proceeding is taken under Article 16, Section 129, of the Code, which authorizes a partition of any lands, etc., on bill of any joint tenant, tenant in common, or any parcener or any concurrent owner, or if said lands, etc., cannot be divided without loss or injury to the parties interested, the Court may decree a sale and a division of the money arising from such sale, among the parties according to their respective rights, etc.

The usual proceedings were taken and in due time the sale of the property was made by the trustee, who reported that he had sold the same to William C. Keene and Catherine Keene. These purchasers on January 29, 1908, filed their exceptions to the ratification of the sale.

The first ground set forth in the exceptions is as follows:

"The property sold to your exceptants was by deed, dated January 5th, 1882, and recorded in Liber F. A. P., No. 919, Folio 181, etc., granted and assigned by William B. Bealmear to Mary C. Hewitt and Elizabeth Hewitt, the survivor and personal representatives and assigns of said survivor and, by mesne conveyances, the interest of Elizabeth Hewitt became vested in the plaintiff. Your exceptants have been advised that by reason of the above limitations, the grantees under said deed acquired only a joint life estate in said property with cross-remainders

over to the survivor or the survivor or to the personal representatives and assigns of the survivor. Your exceptants, therefore, state that this Court has no jurisdiction to pass a decree for the sale of the property in this cause, which is a proceeding for the sale of property for the purpose of partition, because, as above stated, the parties to these proceedings are not concurrent owners of the entire interest in said property."

In order to get clearly in mind the questions raised by this exception, a brief statement of the facts, or rather of the chain of title under which the plaintiff holds, will not be out of place.

On January 5th, 1882, William B. Bealmear assigned the property with which we are concerned in this case to Mary C. Hewitt, the defendant, and Elizabeth Hewitt, the predecessor in title of the plaintiff. The words used in the granting clause are as follows:

"Witnesseth, that in consideration of $1,500, *the said William B. Bealmear Doth grant and assign unto the said Mary C. Hewitt and Elizabeth Hewitt, their survivor, and the personal representatives and assigns of such survivor,* all that lot, etc." The words used in the habendum clause are as follows:

"To have and to hold the lot of ground and premises hereby mentioned to be granted and assigned, with the rights and appurtenances aforesaid, *unto the said Mary C. Hewitt, their survivor, and the personal representatives and assigns of such survivor to their proper use, etc.*"

On May 2, 1900, Elizabeth Hewitt made an assignment of her interest in said lot to Eli Hewitt, using in the granting clause, these words: "Witnesseth, that in consideration of the sum of $300, lawful money, the receipt of which is hereby acknowledged, the said Elizabeth Hewitt *doth grant unto Eli Hewitt, his personal representatives and assigns, all her, the said grantor's right, title, interest and estate, both at law and in equity, being an undivided moiety or one-half in, to, and unto all that lot, etc.*" With a habendum clause as follows: "*To have and to hold the said described lot of ground and premises, unto and to the use of the said Eli Hewitt, his personal representatives and assigns, for all the residue, etc.*"

Eli Hewitt died and all his interest in the aforesaid property has passed under his will, and under administration, and under a deed from his widow, to Judson D. Hewitt, the plaintiff.

The purchasers assert that the deed from Bealmear did not convey an estate in joint tenancy to Mary C. Hewitt and Elizabeth Hewitt under the Maryland statute, but that it only conveyed an estate for their joint lives to the two grantees, with a contingent remainder to the one who might survive; that when Elizabeth made her deed to Eli Hewitt, she only conveyed her one-half undivided life estate.

That as this is all the interest Eli got, it is all that Judson D. Hewitt has, and his life estate not being *concurrent* with the estate or interest of Mary, and there being an *outstanding* interest, viz., the contingent remainder in Elizabeth, a good title cannot be given through these proceedings taken as already stated under Article 16, Section 129 of the Code, to the exceptants, the purchasers.

The plaintiff, on the other hand, asserts that both at common law and under the Maryland statute, the deed from Bealmear to Mary C. Hewitt and Elizabeth Hewitt created a joint tenancy in them. That when Elizabeth made her deed or assignment to Eli Hewitt, she defeated the joint tenancy, and Mary C. and Eli became tenants in common.

That Elizabeth's interest has devolved upon Judson D. Hewitt, the plaintiff, who, when he filed his bill, was tenants in common in the property with Mary C. Hewitt. The first question, then, to be determined is, did the deed from Bealmear to Mary C. and Elizabeth create a joint tenancy in them under the Maryland statute?

The Maryland Code, Article 50, Section 13, which is the codification of the Act of 1822, Chapter 162, is as follows: "No deed, devise, or other instrument of writing shall be construed to create an estate in joint tenancy, unless in such deed, devise or other instrument in writing it is expressly provided that the property thereby conveyed, is to be held in joint tenancy."

The contention of the exceptant is, that in order to create a joint tenancy since the passage of this law it is necessary to say in express language that the property conveyed *is to be held in*

*joint tenancy.* The plaintiff, on the other hand, takes the position that any language showing clearly the intention of the grantor to create a tenancy is sufficient, and falls not only within the spirit, but terms of the statute, which requires that in order to create a joint tenancy it must be expressly so provided.

That the spirit of the statute was not to prohibit the creation of joint tenancy, but only to require that the intention should be clearly expressed, and to so change the common law as to make all co-tenancies where the intention to create a joint tenancy was not declared, tenancy in common.

That the meaning of the language of the statute is "not that the words" joint tenancy shall be used in order to create the same, but that any language which expresses the intention to create a joint tenancy, or which clearly and expressly defines that relation, or tenancy, is sufficient. I have thus endeavored to state as strongly as I am able the contention of the plaintiff.

I will first briefly state the nature of joint tenancy, then refer to some of the cases construing the Maryland statute on the subject. After which I will consider the language and intent of the deed itself from Bealmear to Elizabeth and Mary C. Hewitt.

### Joint Tenancy.

At common law, as stated by Blackstone, joint tenancy exists where lands or tenements are granted to two or more persons, to hold in fee-simple, for life, for years or at will. Its properties are, first Unity of Interest,—One tenant cannot be entitled to one quantity of interest and the other to a different one. Chew vs. Chew, 1 Md. Ch. 63. Second, Unity of Title,—It must be created by one and the same act, e. g., by same deed or will. Third, Unity of Time,—It must vest at one and the same time. Fourth, Unity of Possession,—They are said to be seized by the half or moiety and by all. That is, each has entire possession as to every particle as of the whole. Blackstone, Vol. I, Book 11, p. 182: "They have not, one of them a seizure of one-half or moiety, and the other of the other moiety; neither can one be exclusively seized of one acre and his companion of another; but each has an undivided moiety of the whole, and not the whole of an undivided moiety. And, therefore, if an estate in fee be given to a man and his wife, they are neither properly joint tenants or tenants in common, for husband and wife being considered as one person in law, they cannot take the estate by moieties, both are seized of the entirety, per tout et non per my: The consequence of which is, that neither the husband nor the wife can dispose of any part without the assent of the other, but the whole must remain to the survivor."

From these principles of unity depend certain consequences, the chief and most striking of which is the doctrine of survivorship. Under which upon the death of one tenant the property devolves upon the survivors and to the last survivor.

Mr. Tiffany, in his excellent work on real property, page 368, says: "Joint tenancy exists when a simple estate in land is owned by two or more persons claiming under one instrument; its most important characteristic being that, unless, the statute otherwise provides, the interest of each joint tenant upon his death inures to the benefit of the surviving joint tenant or tenants, to the exclusion of his own heirs, devisees or personal representatives."

In Washburn on Real Property, Section 856, it is stated: "The great distinctive characteristic of joint tenancies among estates of which there is a joint ownership, is the right of survivorship, by which though the estate is limited to them and their heirs, the survivor or survivors take the entire estate, to the exclusion of the heirs or personal representatives of the deceased co-tenant."

Joint tenancies in time fell into disfavor. At first courts of equity took hold of different things to construe a devise, gift or grant as a tenancy in common rather than a joint tenancy.

And courts of law, as well as courts of equity, now have taken hold of expressions such as devised to children to be divided among them in equal shares, or share and share alike, to declare such devise as creating tenancies in common instead of joint tenancies. Glenn vs. Hollingsworth, 3 Md. 190, and Moody vs. Elliott, 1 Md. Ch. 290. At common law, as we have seen, a conveyance simply to two or more persons, was construed as creating a joint tenancy. Such construction has

been changed by statute in all the States.

## Maryland Cases.

The case of Harman vs. Towers, 3 H. & J. 147, decided in 1807, shows that joint tenancy existed in Maryland as at common law, with the quality of survivorship, where the grant was simply to two persons.

It was decided in the case of Gray vs. Lynch, 8 Gill 424, that this act was not intended, and did not apply to trustees upon the ground that survivorship in such cases formed no part of the evil designed to be remedied.

In the case of Marbury vs. Cole, 49 Md. 402, it was held that this legislation did not apply to a conveyance or devise to husband and wife who held not as joint tenants, where there was simply a devise or conveyance to the two, but as tenants by the entireties.

## Language of Deed.

Thus we see that the leading characteristic of joint tenancy is survivorship, and first the courts, afterwards the legislature, on account of this characteristic, have held in disfavor joint tenancies. The hardship in the doctrine of survivorship was that the survivor got all the estate to the exclusion of the heirs of his co-tenant.

But this was only in case the tenancy was not defeated by the act of one of the owners, which could always be done by a conveyance of his interest. His grantee would then become not a joint tenant with the other but a tenant in common with him, the unities of time and title being destroyed. Thus always where there were two persons having property as joint tenants, each had the full power to defeat the survivorship by a conveyance of his interests. This right to convey and thus prevent survivorship has always been incident to joint tenancy.

Now, let us look at the deed from Bealmear to Elizabeth Hewitt and Mary C. Hewitt, and see if its intent and meaning is not inconsistent with the right of either to defeat the survivorship. The language used is "the said William B. Bealmear doth grant and assign unto the said Mary C. Hewitt and Elizabeth Hewitt, their survivor, and the personal representatives and assigns of said survivor."

It seems to me that the conveyance intended the survivor of the two to take the whole property absolutely and in all events. That if Mary died first, Elizabeth was to get the property, and if Elizabeth died first, Mary was to have the property, and that neither by act or deed could defeat this result. If this be the intention of the grantor, they are not joint tenants, because one of the essential characteristics of that relation is lacking, viz., the power of disposition by one to defeat the survivorship.

Major Venable, in his syllabus on Real Property, page 79, gives as an illustration of a contingent remainder: "A grant to A and B for their joint lives, remainder to the survivor, the language in the deed we are considering is to A and B, their survivor, and the personal representatives and assigns of such survivor. It seems to me the meaning of the language in both is the same; that the two hold for their joint lives, with a contingent remainder to the one who outlives the other, or if it be that each takes under the language of the deed, a defeasible fee in one undivided moiety of the property, with an executory limitation as to the other moiety, the result is the same, the proceeds of the sale could not be divided, but would have to be reinvested, to await the contingency, and the section of the Code under which these proceedings are taken, does not cover a case of this character.

The question argued before me as to whether or not a joint tenancy can be created in Maryland since the Act of 1822, without the use of the words to hold in "joint tenancy," or as joint tenants, need not necessarily be passed upon.

There are two cases in Maryland that have touched upon this question. The first was the case of Craft vs. Wilcox, 4 Gill 504, decided in 1846. The opinion was by Chief Justice Archer; and the second, the case of Purdy vs. Purdy, 3 Md. Ch. 553, opinion by Chancellor Johnson.

In the case of Craft vs. Wilcox, the language used was, "To Have And To Hold Unto H. W. and wife, and their heirs and assigns, forever, and the survivor of them to and for no other use."

Archer, C. J.: "The conveyance from Medford to Wilcox and wife, and their heirs and assigns, and the survivor of

them is unaffected by the Act of Assembly of 1822, Chapter 162, in the first place, because it does not create a joint tenancy, and if it does—secondly, because by the use of the term survivor in the grant, the intention is clearly indicated that there shall exist a right of survivorship."

The words above used did not create, even at common law, an estate in joint tenancy, but made W. and his wife tenants by the entireties, an incident of which is that the survivor cannot be prevented from taking the whole property, as such by any act of the other.

One tenant by the entireties cannot defeat the survivorship by a conveyance of his interest as one joint tenant can do, from which it follows that the interest of one is not liable to be taken in execution for his debts during the tenancy, while that of the joint tenant is. If the court at the time the opinion was delivered has lost sight of the estate of tenants by the entireties, and was looking upon Wilcox and his wife as two people not occupying the relation of husband and wife, the authority would be in point.

In the second case, that of Purdy vs. Purdy, the remarks of the chancellor in this subject were not at all necessary to the decision of that case. Nor does he say, that necessarily in all cases, the words "joint tenancy" must be used.

In a case which commissioners had partitioned land, held by A, B, C and D, as tenants in common, the land had been divided into two parts instead of four, and the surveyor's plat and notes had said one part to be held by A and B jointly, and the other by C and D jointly. Joint tenancy was suggested to defeat dower.

The chancellor after stating that neither the surveyor nor the commissioners had any power to fix the nature of the tenure, adds: "But independent of this, the Act of 1822, Ch. 162, in my judgment, even if the plat, with the memorandum in question, created the estate (which, however, it does not), would prevent the effect supposed.

It is not sufficient, in my opinion, that the words employed would, but for the act, be construed to create a joint tenancy, unless the instrument expressly provides it shall be held in joint tenancy."

If one wanted to create a joint tenancy there is no doubt but that the use of these words would bring about the desired result, even though the two parties were husband and wife. Fladung vs. Rose, 58 Md. 13. It is difficult to imagine other words, the use of which, would describe a joint tenancy.

If you describe the estate that two or more persons were to take, and in that description you included all the properties of a joint tenancy and exclude other properties, rather a difficult task, you would, I believe, get as a result, joint tenancy.

If in your description you should get anything inconsistent with that nature of holding, as we seem to have in this case, you would get, what you describe, which would not be joint tenancy.

So, in conclusion, as a practical matter it can, I think, be safely stated, that unless the words, "joint tenants," or "joint tenancy," are used, in a conveyance or will, the relationship will not be created.

Judson Hewitt can have no better title than Elizabeth Hewitt had. She was not a joint tenant, tenant in common, or co-parcener with Mary C. Hewitt, nor was her interest concurrent.

If this property were sold there could be no division of money arising from such sale, but the same would have to be invested for the joint lives of Mary and of Elizabeth, until the contingency, viz: The death of one, happens.

I am, therefore, of the opinion that the sale made under these proceedings will not give title to the purchasers, and shall sustain their exceptions.