## CHARLES M. GIFFIN vs. MARY CORINNE C. BLANDIN and Others.

*Married Women—Assignment of Mortgage—Concurrence of Husband.*

A married woman who holds a mortgage of realty and promissory notes secured thereby has no power to assign the same without the consent and concurrence of her husband, and no title passes by such assignment to a party taking with knowledge that the assignor was a married woman.

Appeal from the Circuit Court for Baltimore County. The case is stated in the opinion of the Court. The bill of complaint of the appellant set forth the assignment of the mortgage and notes by Mrs. Blandin, that default had been made in payment and prayed for a foreclosure of the mortgage. The defendants were A. Victor Cherbonnier, Sarah C. Cherbonnier, M. Corinne C. Blandin and John T. Blandin, her husband. The answer and cross-bill of Blandin and wife averred that the assignments were made by Mrs. Blandin without the knowledge, consent or concurrence of her husband, and that the same were void acts, and prayed for a decree dismissing the bill and declaring void the assignment and transfer to the plaintiff of the mortgage and notes. The Court below (FOWLER, C. J. and BURKE, J.) decreed that the assignments be set aside and declared null, and that plaintiff surrender to Mrs. Blandin, the mortgage and notes. From this decree the plaintiff appealed.

The cause was argued before ROBINSON, C. J., McSHERRY, PAGE, ROBERTS and BOYD, JJ.

*Thomas Ireland Elliott* for the appellant.

The notes secured by the mortgage were negotiable promissory notes, made payable to the order of M. Corinne C. Blandin and indorsed by her before maturity and for value to the appellant.

The notes, therefore, providing as they *expressly* did for the method of their disposition, namely, at "the order" of the payee, they were so disposable. *Miller & Mayhew* v. *Williams et al.*, 5 Md. 235 ; *Cooke* v. *Husbands*, 11 Md. 503. And *in equity* a conveyance by a married woman may be good, though not good *at law. Cooke* v. *Husbands*, 11 Md. 508. And the action here is not a suit *at law* but *in equity;* not an attempt to recover a judgment against Mrs. Blandin personally, but to secure the payment by the mortgagor to the person to whom the order of the mortgagee directed that payment should be made. Nor does the Code prohibit such a disposition by a married woman. This was not a *restrictive*, but an *enabling* act. It did "not *exclude* the ordinary methods of conveyance." *Whitridge* v. *Barry*, 42 Md. 152. And what could be more *ordinary* than the method of disposing of a negotiable promissory note ? That method is well known and is well nigh universal. The husband of the payee of those notes must have known it, and must be supposed to have acted in the light of that knowledge.

But say the appellees the husband did not sign the notes along with his wife. This Court has said that is not necessary. *Whitridge* v. *Barry*, 42 Md. 152. And even where concurrence of the husband is necessary, that concurrence may be *implied* as well as expressed.

But says the husband, my concurrence cannot be implied. In answer to that we say :

(1.) M. Corinne C. Blandin had a *legal* estate in certain property. She and her husband united in a deed divesting her of that legal title, and he consented that instead of that legal estate she should take negotiable promissory notes made *expressly* payable to her order, and made by the law merchant transferrable upon the sole order of the payee.

(2.) He, the husband, knowingly permits the wife and payee to be the sole custodian of those notes, and he never even sees them or inquires about them, though one of

them was maturing every three months, until after his wife has told him that she has disposed of them.

(3.) And even then, although she knew, and could have told him where they were, he never inquires where they are, but waits until his wife is notified by the appellant, that, by reason of default by Edward G. Cherbonnier, he claims the right to collect the interest note due October 8, 1890, and then undertakes to repudiate the transfer, and to claim that he didn't concur. But his repudiation is not absolute and he asks for delay, and gives assurance that payment will come with a "little patience." (Record, page 27.)

Could there be a clearer case of *implied* concurrence, if concurrence were necessary? Will a Court of Equity strain the law against a party whose injury has been rendered possible by the one who is seeking the strict construction?

The assignee of a note, before maturity and for value, has a right to presume that the assignor had authority to assign. *Citizens' Nat. Bank* v. *Hooper*, 47 Md. 98. Notice of any disability to assign must be proved. *Maitland* v. *Citizens' Nat. Bank*, 40 Md. 568; *Carpenter* v. *Langon*, 16 Wall. 271, *Com. &c., Bank* v. *First Nat. Bank*, 30 Md. 26. It was not necessary to show the concurrence of the husband in writing. *Wingert* v. *Gordon*, 66 Md. 110.

It is too clear for argument, that with the notes secured by the mortgage, the right to the mortgage also passed to the assignee. *Clark* v. *Levering*, 1 Md. Ch. 180; *Ross* v. *Winn*, 2 Md. Ch. 25; *Ross* v. *Winn*, 4 Md. Ch. 255; *Timms* v. *Shannon*, 19 Md. 314; *Byles* v. *Tome*, 39 Md. 463; *Boyd* v. *Parker*, 43 Md. 199; *Hewitt* v. *Coulbourn*, 54 Md. 63; *Carpenter* v. *Longan*, 16 Wall. 271; *Kemcott* v. *Supervisors, &c.*, 16 Wall. 452; *N. O. Canal, &c., Co.* v. *Montgomery*, 95 U. S. 16.

*Samuel D. Schmucker* (with whom were *D. H. Emory* and *George Whitelock* on the brief), for the appellees, cited

*Wingert* v. *Gordon*, 66 Md. 110; *Whitridge* v. *Barry*, 42 Md. 152; *Hull & Hume* v. *Eccleston*, 37 Md. 519.

PAGE J., delivered the opinion of the Court.

This appeal is from a decree of the Circuit Court of Baltimore City, dismissing a bill filed by the appellant for the foreclosure of a mortgage. About July, 1887, a certain A. Victor Cherbonnier and Sarah, his wife, executed and delivered to Mrs. M. Corinne Blandin, who is the wife of John J. Blandin, a deed of mortgage upon certain property therein mentioned, to secure the payment, at maturity, of a principal note of $3,989.82, drawn to the order of Mrs. Blandin, and payable five years after date, and twenty interest notes payable respectively at intervals of three months.

These notes, which are ordinary negotiable promissory notes, were given to Mrs. Blandin to secure the payment of the purchase money for the land mentioned in the mortgage which she had sold to Mr. Cherbonnier, and with her husband, had conveyed to him. Immediately upon their execution they were placed in the possession and custody of Mrs. Blandin, and so remained until they were delivered by her to the appellant or his agent. In the early part of March, 1890, Edward Cherbonnier, who is the brother of Mrs. Blandin, applied to Phillip H. Hoffman, a real estate broker, for a loan of $850. He offered as collateral security these notes, stating at the time that his sister was willing to assign them and the mortgage, and that Mr. Emory (who had drawn them) would give him "every information as to the reliability of the parties * * and as to the property and title." The loan was agreed to be made for Giffin, the appellant. When the notes and mortgage were brought to Mr. Hoffman by Edward Cherbonnier, the former asked why Mr. Blandin had not signed the assignment of mortgage, and was informed that he was out of the country in the service of the Government, and that the security was the property of Mrs. Blandin, and she was "willing to give the surety." In fact, at that time, Mr. Blandin, who is an

officer in the Navy, was on duty in California, and had been away in active service since the latter part of 1887, and there is nothing in the evidence which charges him with any information of these transactions with the appellant, or any one else, with regard to the notes and mortage until his return in May, 1890. He then learned that Edward had obtained possession of them, and it was not until the October following he definitely ascertained what had been done. In that month Mrs. Blandin received a note from Mr. Hoffman informing her that the interest due from her brother, Edward, on the 27th of September, had not been paid and asking her if she would pay it or if he should forward the note of A. Victor Cherbonnier for collection.

This communication, it would seem, passed into the hands of Mr. Blandin; for on the same day he sent to Mr. Hoffmann a reply, in which he stated· that "this arrangement was entered into by Mrs. Blandin without his knowledge or consent, and he wished to have the whole thing annulled at once." On the 21st of October, Mr. Hoffman again wrote, this time to the effect that he didn't wish to act hastily, "but must collect the money due promptly." To which Mr. Blandin replied that he had forwarded Hoffman's first letter to Edward, from whom he soon expected to hear, and desired to be informed in case he did not reply within a reasonable time. "Since your desire is to get your money as soon as possible, I can assure you that you will accomplish this object by a little patience than by trying to collect those notes of A. V. Cherbonnier. I write by this mail to Mr. D. H. Emory to ask him to attend to this matter for me." What Mr. Blandin meant by the last phrase can be thoroughly understood by learning what he instructed Mr. Emory to do. The latter states that the purpose of his employment was to "set aside the transfer  *  *  *  because it was a blot on his title;" that "Mr. Blandin repudiated the transaction from the very beginning," but he "had said that he would like to see Mr. Elliott (Mr. Giffin's attorney) get this $850"  *  *  * and that "he would try and induce Mr. Edward Cherbonnier

to pay it, and that if he could get Mr. Edward Cherbonnier to properly secure him, he would pay Mr. Elliott himself."

Mr. Blandin seems to have been earnestly desirous that Edward should pay his loan, and while carefully refraining from any act or expression which could implicate himself, did offer to pay it, if he could be secured from loss in so doing. The end of all this, however, is stated by Mr. Blandin himself in his letter of 28th October, 1892, to Mr. Emory. He then wrote as follows: "I wrote to Edward * * * and got a reply a short time ago, in which he declined to give me any security. He wanted me to square up with Elliott and wait until he (Edward) got on his feet, when he would settle with me. I wrote him again and told him that by doing as he asked, I would be worse off than now, and asked him to come to some business-like arrangement. I have so far received no reply from him. I hope to be able to go to St. Louis within a short time, say in two or three weeks, and will then make another attempt to get a settlement. This is the best I can do." On the 20th June, 1891, A. Victor Cherbonnier resold the property to Mrs. Blandin and reconveyed the same to her by a deed in which his wife joined, whereby it is claimed; in view of all the circumstances, the mortgage was merged and extinguished. In this state of the facts, Giffin claiming to be the owner of the notes and mortgage, under the assignment of Mrs. Blandin, filed his bill for a foreclosure, to which Blandin and wife, by their answer and cross-bill, replied that the assignments were made without the knowledge, consent or concurrence of Mr. Blandin, and were, therefore, void, and prayed for a decree dismissing the bill, declaring the assignments void, and requiring the complainants to surrender the notes and mortgage to Mrs. Blandin. To the decree of the Court granting the prayer of the cross-bill, this appeal is taken.

It is obvious from this statement that the only question now to be decided is whether, under all the circumstances of

the case, the assignments of Mrs. Blandin, a *feme-covert* were sufficient to pass title in the property to the appellant.

It is fully established by the proof that at the time he took the notes in question the appellant must be charged with full knowledge that Mrs. Blandin was a *feme-covert.* It is so stated in the mortgage. And when the notes were brought for the first time to Mr. Hoffman, his agent, he was told that Mr. Emory had drawn the notes and would give him every information as to the property, the title, the parties and Mrs. Blandin. Later on, when Edward Cherbonnier brought back the notes signed, Mr. Hoffman asked, "why Mr. Blandin had not signed the assignment of mortgage," and was told "that he was out of the country in the service of the United States," and that the security was the property of Mrs. Blandin and "she was perfectly willing to give the security." The appellant, having taken the notes with this knowledge, is not in the position of a purchaser without notice for value, and can only take such title to the instrument as the single indorsement of a *feme covert* can confer.

Now it is settled law in this State that since the adoption of the Code of 1860, the right and power of disposition of a wife's separate estate other than by way of devise, can only be exercised with the concurrence of her husband The purpose of the provisions of the Code, relating to this subject, was to enable the wife, with the concurrence of her husband, to dispose of her property by the usual modes, and not to restrict the power of conveyance so as to require that every portion of her property, however minute, should be conveyed by herself and husband by solemn instrument of writing. But whatever the nature of the transfer, from regard to the interests of the husband and wife, it must be made with the concurrence of the husband, express or implied. *Whitridge* v. *Barry*, 42 Md. 152 ; *Wingert* v. *Gordon*, 66 Md. 111. The appellant, therefore, having taken these assignments with full knowledge that the maker of them was a *feme covert*, in order to maintain his

title must show a concurrence on the part of Mr. Blandin, either express or implied. It was not contended that any express concurrence had been shown. Indeed it could not be successfully so contended, for the proof is clear that at the time of the assignments Mr. Blandin was upon the opposite side of the continent and in absolute ignorance of the transaction, and that when he was informed of it he promptly and decisively expressed his disapproval, and employed an attorney to cause the transfers to be set aside because they "were a blot on his title." Nor is there any evidence that he at any time wavered in his disapproval. It is true that he expressed his solicitude that Edward Cherbonnier should pay his debt to the appellant (and offered if properly secured to pay it for him) but in this there is nothing more than a desire, quite proper under the circumstances, that his wife's brother should not allow his just obligations to remain unsatisfied.

It is insisted, however, that the concurrence of Mr. Blandin may be implied from the circumstances of the case. The argument of the appellant's counsel may be stated as follows : Mrs. Blandin had a legal estate in the property sold to Victor Cherbonnier ; she and her husband united in a deed divesting her of that legal title, and he consented she should take in lieu thereof negotiable promissory notes, made expressly payable to her order ; of these notes he permits her to be the sole custodian, and fails even to inquire where they are until he learns of the transfer; and that by thus allowing her to keep the control and custody of the notes, thus transferable upon her sole order, there arises an implication of his consent to the transfer to Giffin. But we think that so far as concerns Giffin, informed as he was, neither from the fact that the notes were made payable to her order nor from the additional fact that she was permitted by her husband to retain the custody and control of them if taken separately or together, can such an implication properly arise. Giffin knew it was her property that had been sold to Victor Cherbonnier, and that she was en-

titled as of right to have the proceeds of the sale invested in her own name and to hold in her own possession the muniments of her title.   Her husband had no legal right to the custody of the notes, as against his wife, and that he did not take them with him, wherever he was sent by his government, cannot possibly raise any presumption of any kind against him.   Nor will these facts taken in connection with the further fact that he united in the deed conveying the land to the mortgagor aid the appellant's case.   Her possession of the notes by no means gave her the power to transfer them without his concurrence, though drawn to her order.   At common law, such notes would in legal effect be payable to the husband, and an effectual transfer could not be made by the wife without his assent, either expressed or implied.   *Miller* v. *Delawater*, 12 Wend., 435 ; *Steevens* v. *Beets*, 10 Cushing, 291 ; *Chilty on bills*, 21-200-201 ; 17 Miss. 301.

And under the provisions of our Statutes, as we have already said, no transfer of any part of her property could be effectively made without the concurrence of her husband express or implied.   When the real estate was sold, the proceeds thereof having been invested in the notes secured by the mortgage, immediately became subject to the marital protection, and were not liable to be disposed of without the husband's concurrence.   Of all this the appellant is charged with knowledge.   He knew he was taking the notes, on the simple endorsement of a married woman, without any evidence justifying him in inferring the consent of the husband.

. It follows from what we have said that the decree appealed from must be affirmed.

*Decree affirmed.*

(Decided November 23, 1894.)