VROOMAN et al. v. GRAFFLIN et al.

(Circuit Court of Appeals, Fourth Circuit. August 26, 1899.)

No. 285.

CANCELLATION OF DEED—CONVEYANCE IN TRUST—CONFIDENTIAL RELATIONS OF PARTIES.

An intestate at the time of his death was engaged in partnership with his son in a business extending through several states, and requiring large capital, sales being made on long credit. His indebtedness and that of the firm was over $200,000, and the value of his estate depended upon the efficient management and winding up of the business. The partnership articles provided that, in case of the death of a partner, the business should continue for five years, to enable it to be closed up without loss. He left surviving him, besides the son, two daughters, each entitled to an equal share in his estate. One of the daughters, then 47 years of age, being about to marry and remove to a distance, on the advice of her father's legal adviser executed a deed conveying to her brother in trust for five years all her interest in her father's estate, with full power to deal with the property in his discretion, but reserving to herself her share of the annual income. The brother did not solicit the conveyance, or know of it, until it had been determined upon. *Held*, that under the circumstances such conveyance was not an improper one, and, it appearing that the grantor was a woman of more than usual intelligence and business capacity, and that she fully understood the nature and effect of the conveyance, that it would not be set aside as improvident, or obtained by improper means.

Waddill, District Judge, dissenting.

Appeal from the Circuit Court of the United States for the District of Maryland.

S. S. Field and William Pinkney Whyte, for appellants.

Frank Gosnell (T. M. Lanahan, on the brief), for appellees.

Before SIMONTON, Circuit Judge, and PAUL and WADDILL, District Judges.

SIMONTON, Circuit Judge. This is an appeal from a decree of the circuit court of the United States for the district of Maryland,

sitting in equity. The bill of complaint was filed by Walter Vrooman and Amne L., his wife, seeking to set aside and declare fraudulent and void a certain deed of trust executed between the said Amne L., before her marriage, under the name of Amne L. Grafflin, and her brother, William H. Grafflin. The circuit court, on a full hearing of the cause, passed upon the issues of law and of fact involved therein, and dismissed the bill. The complainants, accepting the ruling of the court upon the issues of law, excepted to the finding on the facts, and so the case comes here.

George W. Grafflin, a merchant of Baltimore, died intestate in November, 1896, leaving an estate, real and personal, estimated to be worth between $600,000 and $1,000,000. He and his son, the principal defendant, had been trading under the firm name of George W. Grafflin & Co. Their business was that of the manufacture and sale of fertilizers, and was very extensive, ramifying into many states. The fortune of Mr. Grafflin was in this business, in shares of stock in many fertilizer companies, and in land. His lands were estimated at about $100,000, and his whole property was used in sustaining the credit and promoting the interests of his business. He died, as has been said, intestate, leaving as his sole heirs and distributees at law his son, William H. Grafflin, and two daughters, Mrs. Laura Elma Buck, a widow, and Miss Amne L. Grafflin, the complainant. Miss Grafflin was possessed in her own right of real estate in Baltimore, the family residence and the lot adjoining, and one-half of the life insurance of her father, $10,000, besides a bank account. Besides this, she had her undivided third interest in her father's business, its assets, and the real estate. Early in January, 1897, about two months after the death of her father, Miss Grafflin announced her engagement to marry Walter Vrooman, a clergyman and politician, resident in St. Louis, Mo. Between her and her brother there had always existed the most tender affection and unfailing confidence. When he heard of the projected marriage, William H. Grafflin, though much distressed thereat, would not discuss it with his sister, but he advised her, as she was about to leave Baltimore, and reside in St. Louis, she ought to have some person, in whom she could confide, to represent her, and act for her in the settlement of her father's complicated estate. He recommended Mr. B. F. Newcomer, a well-known and highly respected merchant of Baltimore, for this purpose, and also suggested that she should consult Mr. Lanahan, a leading member of the bar of that city, the confidential counsel of her father for many years, and at that time the legal adviser of the estate. Recognizing the necessity and propriety of this, she consulted Mr. Lanahan, and had a protracted interview with him. He encouraged her to deal frankly with him as her legal adviser, and sought to know the purpose she had in view. As the result of this interview, he prepared the deed in question. He then visited her with the draft, read it carefully to her, she sitting by his side overlooking the deed, gave to her all the explanations she asked for, called attention specially to the provision made for her future husband, and at the conclusion of the examination with her of the deed asked her if she understood it, and was satisfied with it. She replied that she

did understand it, and was satisfied. Some days afterwards the deed was sent to her through a clerk of Mr. Lanahan, and was formally executed by her, and then by W. H. Grafflin. At no time did the latter confer with his sister with respect to the deed. But Mr. Lanahan, in his conference with Miss Grafflin, after inquiring and ascertaining that she had complete confidence in her brother, then suggested that she select him, and not Mr. Newcomer, as the person to act for her. She promptly and cordially assented. It then became necessary to show him the deed, and this was done. The deed was promptly placed on record. It is now charged that this deed in no sense expressed the desire or purpose of Miss Grafflin; that all she desired to do was to give her brother a power of attorney to act for her; and that the deed was the result of treacherous conduct on the part of Mr. Lanahan. "He found it an easy matter for a woman totally ignorant of affairs, and unaccustomed to looking for legal pitfalls, and reposing absolute confidence in those with whom she was dealing, to be betrayed into signing so extraordinary a paper as this deed." These are grave charges.

What kind of a paper was it necessary to prepare in order to carry out the purpose of both parties to it? The undivided estate of George W. Grafflin, in which his three children were interested, consisted, as has been said, in the business of his firm, the stock and plant on hand, shares in several fertilizer companies, and in certain parcels of real estate, acquired, no doubt, in the exigencies of his business. The business,—the manufacture and sale of fertilizers,—of vast extent, requires great capital. He borrowed large sums of money in order to conduct it. The bills payable of the firm on December 1st after his death amounted to $175,000. His floating debt was some $60,000. The policy of the business was to sell the goods on a long credit. The collections depended largely on the success of the farmers who used the fertilizers. The utmost care was necessary to the watching, collecting, compromising, and realizing on these outstanding credits. For this reason the co-partnership articles provided that upon the death of a partner the business should go on for five years, so that it be wound up naturally under one possessed of knowledge and skill in the business. Upon success in this depended the solvency of the estate of the intestate. In winding up this large business, and in disposing of the parcels of real estate, uniformity of purpose and perfect unanimity in management were essential. The interests of the three children of the intestate were undivided, and were equal. If it were necessary, in every business emergency which should arise, that each one of them should be consulted, and should concur, great delay would be occasioned, and many a valuable opportunity would be lost. William H. Grafflin was the surviving partner. He was on the most intimate and confidential terms with his sister, and possessed her entire confidence. He is a man of capacity. What more natural, more essential course could be adopted than to put on him the sole responsibility, and intrust him with the sole management of the whole estate? To accomplish this, this paper was suggested and prepared. A power of attorney could not have accomplished it. Miss Grafflin was about to be married.

Her marriage would clothe her husband with an interest in real estate in which she was a part owner. It would itself operate as a revocation of the power of attorney. Story, Ag. § 481; Mechem, Ag. § 268; Giffin v. Blandin, 80 Md. 136, 30 Atl. 624. It was suggested at bar that in a case like this it would be a power coupled with an interest, and so irrevocable. It is difficult to see how such a power₁ would be one coupled with an interest. If such be the case, then Miss Grafflin would have been placed irrevocably in the power of her brother, and be remitted to a civil suit for damages against him for misfeasance or malfeasance,—a result tenfold worse than that which is now set up to avoid this deed. The deed in question seeks to meet the end in this way: It deals only with the undivided interest in George W. Grafflin's estate. It conveys all of this undivided interest of Miss Grafflin to her brother as trustee. Thus his accountability to the prompt and complete remedies in equity was secured. It gave the trustee the most ample power in the disposition and management of this undivided interest. It thus secured uniformity of purpose and perfect unanimity in the management of the complex common property. But, his duties being under an express trust, he was always subject to the supervision of a court of equity. It secured to Miss Grafflin her share in the net annual income of the estate. Nor are safeguards wanting. The co-partnership articles directed that the business must be settled within five years from the death of a partner. This deed was revocable in five years. Although she had, for business purposes, given the sole management to her brother, she had the absolute disposition of all her property, of every kind and description, by will; and, in case she made no such disposition, a provision was made for her husband, the suggestion for which she herself approved and confirmed. The usual provision for substitution of trustee was adopted. As W. H. Grafflin knew all that was necessary in the business, he was the best person to judge of the qualifications of his successor. If he failed to name one, Miss Grafflin had the sole right to do so. This deed, therefore, gave to William H. Grafflin a free hand in winding up and settling the estate of the intestate. It interfered in no way with the property in which Miss Grafflin had the sole interest. That was carefully excluded from his contract. It accomplished the precise purpose which Miss Grafflin told her sister just before her marriage it was intended to accomplish. "I have had Mr. Lanahan make a paper giving Will the power for five years to do as he pleases with my affairs. He doesn't even have to send to St. Louis for my signature. You know that if I am here on the spot, and Will should ask me or should ask you for our signatures to any paper, we would not hesitate." This deed was dated February 13, 1897, and was recorded on the 15th of the same month. It is not enough, however, that the provisions of the deed were wise. Was Miss Grafflin imposed upon, advantage being taken of her weakness, confidence, or affection? She was, at the date of the deed, 47 years old. She is a woman of culture, had interested herself in social and political problems, and was a member of several literary clubs. She has unusual intelligence. In her examination as a witness she has betrayed a clearness of comprehension

and a faculty of expression much above the average. Her letters in the case are clear, business-like, to the point, and masculine in their directness. Mr. Lanahan read the deed to her, and was careful in learning if she understood it. On cross-examination she showed that she has not been a perfunctory listener. There is no evidence whatever that W. H. Grafflin used any effort to procure her signature to the deed. It is impossible to escape the conclusion that at the time she executed the deed she understood its purpose, and was satisfied with it. After her marriage, and when she was in St. Louis, her opinion changed. The strongest influences were brought to bear upon her, and at last, in despite of her life-long confidence in her brother, she was persuaded that he was the abettor or the willing tool of an infamous piece of treachery upon the part of Mr. Lanahan, a member of the bar, distinguished for his character and learning. Her husband and herself instituted the proceedings in the circuit court, attacking the bona fides of the deed. The court accepted the law upon which complainants relied. It treated the case as if the fiduciary relation between Miss Grafflin and her brother cast suspicion upon any contract between them. The defendants bore the burden of showing bona fides in the deed. After full hearing, the court uses this language:

"With this rule of law applied to the facts of this case, about which there is but little controversy, we are forced to the conclusion that the deed of February 13, 1897, was made by the complainant, Anne L. Grafflin, freely, and of her own accord; that it was her voluntary and unbiased act; and that she deliberately executed it, knowing full well its nature and effect."

A careful examination of the testimony, and grave consideration of the arguments of counsel, lead this court to the same conclusion. The decree of the circuit court is affirmed.

WADDILL, District Judge, dissents.