## Horatio L. Whitridge *vs.* Rosalie C. Barry.

*Lex Fori. Assignment of a chose in action by a Féme Covert—Construction of sections 2 and 11, of Art. 45 of the Code, relating to Husband and Wife—Assignment under duress by a Féme Covert of a Policy of Insurance, to an innocent Assignee for a Valuable consideration.*

On a bill of interpleader filed in a Maryland Court, to settle the conflicting claims of two parties under a policy of insurance made payable in Philadelphia, growing out of an assignment of the policy made in the City of New York, both parties having appeared to the suit, the case must be disposed of according to the law of Maryland.

A policy of insurance taken on the life of a husband for the sole use of his wife, and payable to her or her assigns, is a *chose in action* of the wife's, which she has the right to assign or otherwise dispose of with her husband's consent.

The wife holding such policy, attached her signature to a blank printed form not attached to the policy, without name of assignee or date, and with no directions from her as to the filling up the blanks or as to the delivery of the paper or policy. Whether such a paper signed and delivered in blank with an express or implied authority from the party signing it to fill up the blank to the person to whom it is delivered, as he thought proper, and who afterwards filled it up accordingly, is a valid assignment sufficient to pass the title to the *chose in action,* *Quære?*

The advance to B. by A. of certain promissory notes to a large amount, which he had finally to pay, upon the faith of B's securing him by the assignment of policies of insurance and other property, constitutes a sufficient consideration to support B's assignment to A. of such policies.

The signature of a *féme covert* to the assignment of a policy of insurance effected for her sole use, made with the consent of her husband, is sufficient without his signature.

The 2nd section of Art. 45 of the Code, providing for the conveyance of the wife's property by a joint deed with her husband, and the 11th section, where the husband is required to join in the conveyance, were intended to

apply to such conveyances of her property as were required by law to be made by all persons by deed or other instrument of writing as the case might be. They do not exclude the ordinary method of conveyance.

But whatever the nature of the transfer, from regard to the interests of husband and wife, it must be made with the concurrence of the husband, express or implied.

A policy of insurance was taken on the life of a husband for the sole use of his wife, and payable to her or her assigns. The wife influenced by the importunity of her husband, and under circumstances amounting to a controlling duress, and which deprived her of that necessary freedom in the exercise of her mental faculties to make the act binding upon her, attached her signature to a blank printed form not attached to the policy, without name of assignee or date, or designation of the policy, and with no directions from her as to filling the blanks or delivery of the assignment or policy. B. having advanced to the husband certain promissory notes to a large amount, which he had finally to pay, upon the faith of the husband's securing him by the assignment of policies of insurance and other property, the husband caused the assignment to be filled up with a transfer of the policy aforesaid to B., and delivered this assignment and subsequently also the policy itself to B. Upon the death of the husband, in a contest between the wife and the assignee of B. as to which was entitled to recover on the policy, it was HELD :

1st. That B's assignee could claim no greater right than B. held in the policy.

2nd. That the wife was entitled to recover as the importunity under which she signed the instrument of assignment was such as to deprive her of her free agency, or such as she was too weak to resist, and she ought not to be held responsible therefor.

APPEAL from the Circuit Court of Baltimore City.

This was a bill of interpleader, filed by the National Life Insurance Company of the United States of America, chartered by Act of Congress, to have determined the respective rights of Rosalie C. Barry and Horatio L. Whitridge, trustee of William H. Brune, to the proceeds of a policy of insurance effected on the life of John S. Barry, husband of said Rosalie. The policy was made at Washington, D. C., August 28th, 1868, for $5,000, in favor of Rosalie C. Barry, to her sole use if living, and to her

executors, administrators and assigns, if dead; with a provision authorizing its assignment by way of security or absolutely; and made payable at Philadelphia.

About the beginning of August, 1871, Rosalie C. Barry assigned this policy for a valuable consideration, to William H. Brune; who received said assignment from Jno. S. Barry, August 3rd, 1871, and subsequently on the 13th of February, 1872, made a general assignment of all his estate and effects, including the policy of insurance, to Horatio L. Whitridge, for the benefit of his creditors.

The assignment to Brune grew out of the following facts: ·

At several times prior to the assignment, Brune, trading under the name of F. W. Brune & Sons, at the solicitation of said Barry, for his accommodation, and upon the pledge that the notes should be held sacred and certainly paid, and the loan secured by an assignment of policies of insurance on the life of said Barry, and of other property, loaned to Barry the promissory notes of F. W. Brune & Sons, to the amount of about $80,000, all of which notes Brune had ultimately to pay, which so seriously embarrassed him as to compel his failure, and the deed in trust to Whitridge. After the maturity and non-payment by Barry and the payment by Brune of a portion of the notes so loaned, Barry, in partial fulfilment of his promise to secure him, sent to Brune in August, 1871, an assignment, executed by Rosalie C. Barry, in favor of Brune, with power of attorney annexed, of certain policies of insurance on her husband's life, in her favor, among which was the policy in question in this suit, and Brune thereafter renewed certain of the matured notes which he afterwards paid. The policies covered by the assignment were subsequently to its transmission to Brune, also handed him.

This assignment was executed by Rosalie C. Barry, in blank, and filled up with the transfer of the policies aforesaid, by the direction of John S. Barry, to whom she had given it so signed by herself.

John S. Barry died in the City of New York, on the 9th of March, 1872, and the Insurance Company having refused payment under said policy to Whitridge, because of the claim and suit therefor of said Rosalie, instituted at Philadelphia, Whitridge brought suit against the company in the Superior Court of Baltimore City, which was afterwards discontinued.

Other facts in the case are stated in the opinion of this Court.

The appeal is taken from the decree of the Circuit Court awarding the amount of the policy to Rosalie C. Barry.

The cause was argued before BARTOL, C. J., STEWART, MILLER and ALVEY, J.

*J. Morrison Harris* and *Fred. W. Brune*, for the appellant.

This is to be construed as a Maryland contract; and a Maryland Court adjudicating the administration of a fund under its own jurisdiction, is bound to maintain and enforce an assignment valid under Maryland law, even if such assignment might be held invalid under the laws of New York, where said Rosalie C. Barry was living at the time of its execution. *Wilson vs. Carson*, 12 *Md.*, 75; *Smith vs. McAtee*, 27 *Md.*, 438, 439; *Story's Confl. of Laws*, sec. 28.

The execution of the assignment, an unsealed instrument, by Mrs. Barry, in blank, and the subsequent filling up by the direction of her husband to whom she had given it, do not affect its validity; the rule being, that the execution and delivery of an assignment of personal property, in blank, authorizes the person to whom it is delivered, to fill up the blank so as to make it an efficient transfer of such property. *Kent vs. Somerville*, 7 *G. & J.*, 265, 279; *Shriner vs. Lamborn*, 12 *Md.*, 174; *Van Duzer vs. Howe*, 21 *N. Y.*, 534-5; *Brainerd vs. N. Y., & H. Ri.*

*Rd.,* 10 *Bosworth,* 334; *Chesley vs. Taylor,* 3 *Gill,* 255; *White vs. Vermont and Mass. R. R. Co.,* 21 *Howard,* 575; *McNeil vs. Tenth National Bk.,* 46 *N. Y.,* 329, 331; *Leitch vs. Wells,* 48 *N. Y.,* 637; *Edgerton vs. Thomas,* 5 *Selden,* 40; *Preston vs. Hull, Law Register, Nov.,* 1873.

A life policy, like any other chose in action, is assignable by the person in whose favor the contract is made. *New York Life Insurance Company vs. Flack,* 3 *Md.,* 341, Affirmed by *Emerick vs. Coakley,* 35 *Md.,* 190.

The assignment was valid in that it dealt with property which Mrs. Barry in her own right was fully competent to transfer; the said policy being a chose in action legally created and settled to the sole and separate use of the said Rosalie C. Barry, with an absolute right of disposition under the contract of settlement, which she was competent to deal with as a *féme sole.* *Act of Congress,* 1868, *ch.* 239; *Price vs. Bigham, Excts.,* 7 *H. & J.,* 318-9; *Tiernan vs. Poor,* 1 *G. & J.,* 224, 227; *Brundige vs. Poor,* 2 *G. & J.,* 13; *Cook vs. Husbands,* 11 *Md.,* 492, 506; *Buchanan vs. Turner,* 26 *Md.,* 5, 6, 7; *Schull vs. Murray,* 32 *Md.,* 15; *Schley's Ex. vs. McCeney,* 36 *Md.,* 273, 275; *Sugden on Powers, sec.* 907.

Nor were technical words necessary to create a separate use, when adequate words shew that the husband was not to enjoy what the law would otherwise give him. *Hutchins vs. Dixon,* 11 *Md.,* 37, 38: *Prout vs. Roby,* 15 *Wallace,* 474. The test being the intention to carry the title to the fund beyond the period of the wife's death, and to exclude the husband. *Marshall vs. Beall,* 6 *Howard,* 70; *Carroll vs. Lee,* 3 *G. & J.,* 504-8; *Prout vs. Roby,* 15 *Wallace,* 474; *Wa'ers vs. Tazewell,* 9 *Md.,* 301-303; *Townsend, Adm'r vs. Matthews,* 10 *Md.,* 255.

And being so settled to her separate use, without any restriction, on the face of the instrument creating it, of her power of disposition, she had a right to dispose of it by deed or will, without the assent of her husband, and her

power of disposition is not affected by the provision of the Code, Art. 45, section 11, which applies only to her disposition of her general property, belonging to her as a *feme covert* and not to property settled or given to her separate use as a *feme sole;* and the assignment in question was made by her in execution of the right of disposition contained in the instrument itself, which she was competent to execute, both before and since the Code, without the joinder of her husband. *Price vs. Bigham's Excts.*, 7 *H. & J.*, 318-9; *Cook vs. Husbands*, 11 *Md.*, 492; *Buchanan vs. Turner*, 26 *Md.*, 5, 6, 7; *Schull vs. Murray*, 32 *Md.*, 15; *Schley's Ex'x vs. McCeney*, 36 *Md.*, 273-5; *Sugden on Powers, sec.* 907.

But any obscurity on this point from the language of the Code is relieved by the ruling of the Court in the case of *Hall & Hume vs. Eccleston*, 37 *Md.*, 510; see also *Leitch vs. Wells*, 48 *N. Y.*, 637; *Edgerton vs. Thomas*, 5 *Selden*, 40.

This assignment of a *chose in action* created and settled to the sole and separate use of Mrs. Barry, voluntarily signed by her in blank, handed to her husband, by his direction filled up, with a transfer among other things of the policy in question, was transferred to and held by Brune, under circumstances that made him a holder for value and vested in him a legal and sufficient title to the proceeds of the policy.

It is not necessary to constitute a *bona fide* holding that the value should have been paid at the time of receiving the security—a part consideration is sufficient. *Sawyer vs. Prickett and Wife*, 19 *Wall.*, 166; *Swift vs. Tyson*, 16 *Pet.*, 1; *Goodman vs. Simonds*, 20 *How.*, 343.

Brune being in possession *bona fide* of the assignment, and a holder for value, cannot be affected in his rights by the assumed misrepresentations by which the husband is said to have procured it from his wife; because he was not cognizant of the means used and in no way aided or

abetted them. *Corbett vs. Brock,* 20 *Beaven,* 524 ; *Van Duzer vs. Howe,* 21 *New York,* 535 ; *Hall vs. Hinks,* 21 *Md.,* 416, 417 ; *Powell vs. Bradlee,* 9 *G. & J.,* 220.

She handed the assignment to her husband in blank, which gave him the right to fill it up ; and her act held him out as the owner of, or as having power of disposition over, the property, and parties innocent of the fraud, dealing with him for value, are protected against her claim. *Van Duzer vs. Howe,* 21 *N. Y.,* 535 ; *N. Y. & N. H. R. R. Co. vs. Schuyler,* 34 *N. Y.,* 59 ; *McNeil vs. Tenth National Bank,* 46 *N. Y.,* 329 ; *White vs. Vermont & Mass. R. R.,* 21 *Howard,* 576 ; *McHenry vs. Davis,* 10 *Equity Cases,* (*Law Rep.,*) 88. See also *Carr vs. Le Fevre,* 27 *Penn.,* 413 ; *Mechanics' Bank vs. N. Y. R. R.,* 4 *Duer,* 480-539-582 ; *Carpenter vs. Longan,* 16 *Wall.,* 273.

The appellee is estopped from disavowing the legitimate consequence of her act, in thus allowing her husband to hold himself out as the owner of, or having full power of disposition over, the property, because Brune was misled by it to his prejudice ; this constitutes an estoppel *in pais.* *Freeman vs. Buckingham,* 18 *Howard,* 182 ; *Funk vs. Newcomer,* 10 *Md.,* 301 ; for admissions *acted on by others,* whether true or false, are conclusive against the party making them in all cases between him, and the party whose conduct he has thus influenced. *McClellan and Wife vs. Kennedy,* 8 *Md.,* 230. See also *McClellan vs. Kennedy,* 3 *Md. Ch. Dec.,* 247 ; *Hall vs. Hinks,* 21 *Md.,* 416, 417.

*John P. Poe* and *I. Nevett Steele,* for the appellee.

Between Brune and the appellee, and therefore between the appellant and the appellee, the assignment is void. Because if its execution be conceded as claimed, the paper, when signed by the appellee, was a blank printed form, without name, date, attesting witness or written recitals of any kind, with no authority to any body to insert what

was afterwards inserted, and to deliver the paper to any body as an operative instrument, or to deliver the policies, which, in point of fact, were not delivered until long afterwards.

A signature and seal attached to a blank piece of paper, for the purpose of having a bond thereafter written upon it, will not bind the party as an obligor in such bond; but if a party so signing and sealing after the bond is filled up, adopts it as his bond, it is sufficient. *Byers vs. McClanahan*, 6 *Gill & Johns.*, 250 ; *Hibblewhite vs. M'Morine*, 6 *Mees. & Wels.*, 200; *Drury vs. Foster*, 2 *Wallace*, 24 ; *Preston vs. Hull*, 23 *Grattan*, 600.

The paper here was a mere nullity when it left the appellee's hands, nor did she ever see it or recognize it afterwards, much less adopt it.

There is a class of cases in favor of the validity of the assignment of personal property, where the paper is signed and delivered in blank, either upon an express or implied parol authority from the party signing it, to fill up the blank to the person to whom it is delivered, and it is afterwards filled up by the holder.   But the case now before the Court is altogether distinct from them in the following particulars :

1st.  Here it is not pretended that there was any *express* parol authority to Mr. Barry to fill up the blank as it was afterwards filled.

2nd.  Nor was there any *implied* parol authority to do so.   There is no proof that the policy in question was mentioned by either party, or that the name of the assignee, or amount, or subject-matter of assignment was adverted to at all.

3rd.  All the cases in which blank assignments subsequently filled up, have been sustained, will be found to be assignments of *choses in action*, where the written evidence of the *chose in action*, (such as a bond,) is itself assigned and *delivered*, and where the delivery of the bond by the

holder, accompanied by his endorsement, is held to give by implication the right to the transferee to fill it up to himself, or to any third party. See *Chesley vs. Taylor*, 3 *Gill*, 251.

In all these cases the delivery of the evidence of the debt with a blank endorsement or assignment upon it, implies an authority to make such assignment or endorsement effectual by writing over the endorsement or blank assignment what the parties intended should be written. But here the evidence of debt, the *chose in action*, the policy of insurance was not endorsed, nor assigned, nor delivered, nor authorized to be endorsed, assigned or delivered to Brune, or to any other party, and there can, therefore, be no implication of a parol authority to assign this policy, which the delivery of the policy itself, endorsed or assigned in blank, might have raised.

The blank paper which the appellee signed was not physically, or in any other way connected with the policy, so as to create the inference of her intent to assign it by force of her blank signature upon it, or connected with it, to be afterwards filled up, and it cannot of itself, therefore, operate to confer by implication a parol authority to transfer this particular policy.

Assuming that the law of Maryland must govern this question, the assignment is void because it was not executed in the mode required by sections 2 and 11 of Article 45 of the Code.

Here the appellee's interest in the policy was properly acquired, according to the provisions of the first section of Article 45 ; and by the plain and express terms of the 2nd and 11th sections could, therefore, only be alienated in the mode pointed out by these sections, viz : by a joint deed with her husband.

Where a mode of alienation or appointment is provided in the instrument creating the estate, that mode *must* be pursued, for it operates as a *negation* of any *other*, and

is a paramount law, governing and controlling every contract in relation to the property.  *Cooke vs. Husbands*, 11 *Md.*, 492.

*A fortiori*, will this be the case where the instrument creating the estate and designating a particular mode of alienation is a statute, for it will be assumed that the object of the law in designating such particular mode of alienation, was to exclude all other modes and to introduce certainty and uniformity where previously there had existed doubt and variety.

The policy provides that the amount of the insurance shall be paid to the assured for her "*sole*" use.  The Code declares that all property acquired by a married woman by gift, grant, purchase, devise, or in any course of distribution, (thus including plainly an interest in a policy of life insurance,) shall be held by such married woman to her "separate" use.  There is no difference in the meaning of the two words, "sole" and "separate," They are entirely synonymous, and the interest of the wife in this policy is manifestly embraced and covered by the provisions of the Code.

As the alienation was not made in the mode pointed out, viz : by the *joint* deed of Mr. and Mrs. Barry, which is a negation of every other mode, the assignment is a mere nullity.  *Emerich vs. Coakley*, 35 *Md.*, 188; *Hall & Hume vs. Eccleston*, 37 *Md.*, 510.

Nor can such an assignment as the one in question, be sustained upon the ground that the husband *concurred* in it, that is, assented to it.  The mode of alienation designated, is by a "*joint deed*" of husband and wife, not by a separate deed of the wife, assented to *in pais* or by parol by the husband.  The assent of the husband can only be proved as a fact by his joining in the formal execution of the instrument.  Any other construction would nullify the law.

The assignment was not the free and voluntary act of the appellee.  This objection is abundantly proved by the

evidence, and independently of everything else in the case, is fatal to the validity of the alleged assignment. The case in its essential features is not unlike that of *Central Bank vs. Copeland*, 18 *Md.*, 305.

A Court of Equity will consider all the circumstances, and refuse its aid against one who though apparently acting voluntarily, yet in fact executed the contract with a mind so subdued by harshness, extreme distress, or apprehensions short of legal duress, as to empower and control the will. See *Davis vs. Calvert*, 5 *G. & J.*, 269; *Drury vs. Foster*, 2 *Wallace*, 24; *Williams vs. Bayley*, 35 *Law Journal*, 717.

STEWART, J., delivered the opinion of the Court.

The National Life Insurance Company filed a bill of interpleader, in the Circuit Court of Baltimore City, bringing the fund in dispute, within that jurisdiction for determination.

The respective claimants of the proceeds of the policy in question, under the decree of interpleader, have appeared, and the case must be disposed of according to the law of this State.

It seems to be conceded, on all sides, that the *lex fori* must govern in the determination of the case.

The policy in question, was taken on the life of John S. Barry, for the sole use of his wife, Mrs. Barry, the appellee, to whom it was made payable, or to her assigns.

There can be no doubt, it was a *chose in action* of hers, which she had the right to assign, or otherwise dispose of, with her husband's consent. *N. Y. L. I. Co. vs. Flack*, 3 *Md.*, 341; *Emerick vs. Coakley*, 35 *Md.*, 185.

The alleged assignment was not endorsed on the policy. Mrs. Barry's signature was attached to a blank printed form of assignment, without name, date, and with no direction from her, as to the filling up the blanks with the name of any person, or with one or more, or all of her policies; or

to deliver the paper, or policy, signed by her, to any person. Whether such a paper, signed and delivered in blank, with an express or implied authority, from the party signing it, to fill up the blank, to the person to whom it is delivered, as he thought proper, and who afterwards filled it up, accordingly, is a valid assignment and sufficient to pass the title to the *chose in action*, it is not necessary, from the view we take of this case, to decide. The authorities are conflicting, and it is a debateable question. See *Kent vs. Somerville*, 7 *G. & J.*, 265 ; *Chesley vs. Taylor*, 3 *Gill*, 257 ; *Shriner vs. Lamborn*, 12 *Md* , 174 ; *Spiker vs. Nydegger*, 30 *Md.*, 315 ; *Byers vs. McClanahan*, 6 *G. & J.*, 250 ; *White vs. Vermont and Mass. R. R. Co.*, 21 *Howard*, 375 ; *McNeil vs. Tenth National Bank*, 46 *N. Y.*, 329 ; *Litch vs. Wells*, 48 *N. Y.*, 637 ; *Edgerton vs. Thomas*, 5 *Selden*, 40 ; *Dawson vs. Coles*, 16 *Johnson*, 54 ; *Drury vs. Foster*, 2 *Wallace*, 24 ; *Hibblewhite vs. M' Morine*, 6 *Mees. & Wels.*, 200.

Brune having advanced to Barry certain promissory notes, to a large amount, which he had finally to pay, upon the faith of Barry's securing him by the assignment of policies of insurance and other property ; constituted a sufficient consideration to support Mr. Barry's assignment to Brune of the policy in question. *Hannan vs. Towers*, 3 *H. & J.*, 147 ; *Stevenson vs. Reigart*, 1 *Gill*, 27.

We treat the matter as it affected Brune ; his assignee, Whitridge, can claim no greater right than Brune held in the policy.

The signature of Mrs. Barry to the assignment of the policy (if the assignment was otherwise valid) made with the consent of her husband, would be sufficient without his signature thereto. Whether he signed with her or not, was not material to its validity.

Before the Code, the wife, as to her separate property, if not restricted, to a prescribed mode, could convey it, as if she were a *féme sole*. *Cook vs. Husbands*, 11 *Md.*, 492 ;

*Chew's Adm. vs. Beall,* 13 *Md.,* 348 ; *Buchanan vs. Turner,*
26 *Md.,* 1.

The 2nd Sect. of 45th Art. Code, provides for the con-
veyance of the wife's property, by a joint deed, with the
husband ; and the 11th section, where the husband is
required to join in the conveyance, were intended to apply
to such conveyances of her property, as are otherwise
required by the law, to be made by all persons, by deed
or other instrument of writing, as the case may be. They
do not exclude the ordinary methods of conveyance.

The purpose of these provisions was to enable the wife,
with the concurrence of her husband, to dispose of her pro-
perty by the usual modes and not to restrict the power of
conveyance so as to require that every portion of her pro-
perty, however minute, should be conveyed by herself and
husband, by solemn instrument of writing.

But whatever the nature of the transfer, from regard to
the interests of husband and wife, it must be made, with
the concurrence of the husband, express or implied.

Mrs. Barry, who thus executed the alleged assignment
of the policy, appears from the evidence, to have been not
at all deficient in mental capacity, to understand what
she was doing ; on the contrary, endowed with more than
ordinary intelligence.

But notwithstanding such was the character of her
mind ; the evidence, mainly from herself, shows to a suffi-
cient extent, although not free from difficulty, that at the
time she executed the assignment in question, she was
laboring under controlling duress, and had not that neces-
sary freedom, in the exercise of her mental faculties, to
make the act binding upon her, to all intents and purposes.

Mrs. Barry seems to have been advised of the views and
financial efforts of her husband ; was made familiar with
his plans and schemes, and fully impressed, by his per-
sistent importunities, with serious apprehension as to his
condition and the state of his affairs.

According to her statement, admitted as evidence, she seemed to have been fearful of the consequences as to his future course, if she failed to sign the paper, as he requested.

Most undoubtedly she was much exercised over this matter, hesitating and undetermined as to what she should do.

But after having repeatedly before refused to sign the instrument left with her, for the purpose, she was induced to change her purpose.

In determining as to her moral freedom, in the execution of the act, as affecting her legal responsibility, her relation as wife, to her husband, must have much force; and adequate allowance, should be made therefor.

The circumstances surrounding her and her husband, giving character to the act, must be duly considered.

From a full consideration of all the evidence, we are constrained to the conclusion that there was such a pressure upon her, from the condition of her husband and apprehended consequences, she was deprived of that moral agency requisite to a binding act, in the conveyance of her policy, and that she ought not to be held responsible therefor.

Such was the unanimous opinion of the Judges of the Court of Appeals of New York, upon the same testimony, affirming the action of the inferior Court, and deciding that her signature was to be considered as affixed, under duress and compulsion.  Much respect is due to the opinion of that learned tribunal, and without very convincing evidence to the contrary, their conclusion is not to be disregarded.

A Court of Equity cannot hold her bound by her act, under the circumstances.

Whilst it is not every degree of importunity that is sufficient to invalidate an instrument transferring property; yet if it be such as to deprive the party executing it of her

free agency; or such as she is too weak to resist, she ought not to be held responsible therefor. *Davis vs. Calvert,* 5 *G. & J.,* 269; *Wittman and Wife vs. Goodhand,* 26 *Md.,* 95.

The facts disclosed in this case must give the appellee the benefit of such defence.

From a careful consideration of the evidence, and the principles of law and equity applicable thereto, we think Mrs. Barry ought not to be estopped from claiming the fund in Court, and it must be paid over to her.

*Decree affirmed, and*
*cause remanded.*