HARVEY B. BREWER and ANNIE E. BREWER, His
WIFE, and HENRY F. WINGERT, *vs.*
SAMUEL W. SOWERS.

SAMUEL W. SOWERS *vs.* HARVEY B. BREWER and
ANNIE E. BREWER, His WIFE, and
HENRY F. WINGERT.

*Options*: *delay in payment; caused by failure of vendor to
accept; interest. Consideration; equity;
instruments under seal.*

The fact that a purchaser has not completed his payment does
not defeat his right to a specific performance of a contract
of sale, when such failure was due to acts of the vendor in
hindering or preventing the payment.  p. 686

In the absence of fraud, or some inequitable advantage taken
by one party over another, Courts do not inquire into the
adequacy of the consideration for the promise, if only it be
something of value.  p. 687

Any consideration, however small, is sufficient in a Court of
Equity to uphold an agreement.  p. 687

When an agreement giving an option is under seal, no other
consideration is necessary.  p. 687

Where it is the fault of the vendor of real estate, that he did
not receive the purchase money, or balance due, from the
vendee, interest on the delayed payment should not be allowed.
p. 690

And the vendee, in such a case, should be allowed interest on
the monies he paid into Court in proceedings for specific per-
formance.  p. 691

A person able to real and write, and apparently possessed of all
his faculties, is presumed to have read a paper signed by
him.  p. 690

*Decided November 15th, 1912.*

Two appeals from the Circuit Court for Washington
County, in Equity (KEEDY, J.).

BRISCOE, PEARCE, BURKE, THOMAS, PATTISON and STOCK-
The two causes were argued together before BOYD, C. J.,
BRIDGE, JJ.

*Henry F. Wingert* and *Harvey R. Spessard* (with *Miller Wingert* on the brief), for the appellant, Harvey B. Brewer *et als.*

*Harvey R. Spessard* filed a brief for Annie E. Brewer.

*S. C. Strite* and *Frank G. Wagaman,* for the appellee, Samuel W. Sowers.

BOYD, C. J., delivered the opinion of the Court.

On the 26th day of September, 1910, the following agreement was made under the hands and seals of the parties: "This agreement, made and entered into this 26th day of September, A. D. 1910, by and between Harvey B. Brewer and Mrs. Annie Brewer, his wife, of Washington County, State of Maryland, parties of the first part, and Samuel W. Sowers, of Washington County, State of Maryland, party of the second part, witnesseth, that for and in consideration of the sum of one dollar cash in hand, receipt of which is hereby acknowledged, we, the parties of the first part, do hereby grant unto the party of the second part the option to buy on or before November 1st, 1910, the following described property at ($12,000), as follows: $1,500 cash on or before November 1st, 1910, and balance on or before April 1st, 1911, when full possession will be given, being all that farm containing about 60 acres, situate about one mile north of Hagerstown, Md., along the Maugansville public road, being same farm now owned and occupied by the parties of the first part; and we bind ourselves that upon the tender or payment of the full amount as set forth above at any time within the time specified to make and deliver a good and sufficient deed for same to Samuel W. Sowers, the party of the second part, heirs or assigns, free and discharged of all liens and incumbrances of every character and description whatsoever. If at the expiration of the time above mentioned the terms as set forth have not been complied with, then this option shall be considered as null and void. Witness our hands and seals this day and date. The parties of the first part agree that the wheat crop of about 20 acres shall be included in the above mentioned price."

On the 25th of October, 1910, Mr. Sowers notified Mr. Brewer that he would go to his place the next day to pay him the $1,500 according to the terms of the agreement. On that day he did go to the Brewer farm to pay the $1,500 cash, which he took with him. He was told that Mr. Brewer was not at home, although he testified that when he was near the lane which leads to the buildings on the farm he saw Brewer leave a fodder stack at which he had been working. A child had told him he was in the barn, but he was unable to find him, and after driving over the farm he returned to the barn, but still failed to find him.

Upon his return to Hagerstown he wrote Brewer a letter notifying him that he would be at his house Saturday, October 29th, at 2 o'clock P. M., to pay him the $1,500 cash, according to the terms of the option given by himself and wife, on September 26th, 1910, and registered that letter. At the time named he went to the farm, taking with him the $1,500 in cash, but was unable to find Brewer. On November 1st he went to Brewer's farm for the third time, but still failed to see him. During that time Brewer had his mail left by the carrier at the store of C. C. Ditto and the registered letter was left there. Although Brewer got a daily paper and other mail at that store, he did not take the registered letter, and it was finally returned to Mr. Sowers by the post-office officials. While it was at Mr. Ditto's store in Brewer's mail box, Mr. Ditto called Mrs. Brewer's attention to it, but she did not take it, and it can not be doubted that she and Brewer knew, or at least suspected, what it was.

Without referring to other evidence on the subject, it is perfectly manifest that Brewer was endeavoring to keep out of Sowers' way, to prevent him from paying the $1,500. Failing to find Brewer, Sowers on November 1st, 1910, filed a bill of complaint against him and his wife, praying for specific performance of the agreement and for an injunction to restrain them from selling or in any way alienating the lands. He paid the $1,500 into Court and alleged in his

bill that he was prepared to fully comply with the terms of the agreement, and stated in detail the efforts he had made to reach Brewer.

The bill alleged, among other things, that Brewer "is willfully, deliberately and fraudulently absenting himself from his usual place of residence, and is thus avoiding your orator, and attempting to defeat him in his efforts to find him, the said Harvey B. Brewer, so as thus to make it impossible for your orator to fulfill and literally comply with the contract until after the first day of November, 1910"; but on December 12th Brewer answered that and other paragraphs specifically mentioned by saying he "neither admits nor denies the matters and things therein alleged and requires that the same shall be duly proven." Mrs. Brewer in her answer filed the same day alleged that "she signed the agreement upon the information that the same was an option to the Cumberland Valley Railroad Co., to sell a strip of land for the consideration of $1,500, and acting upon this information she signed said agreement," and alleged she would not have signed it if she had known that it was a right or privilege to the complainant to purchase the farm.

Three days before those answers were filed Jacob H. Cost, who held a mortgage on the farm for $4,660, assigned it to Henry F. Wingert, for the purpose of foreclosure and collection. Mr. Wingert, who was also attorney for Brewer, advertised the property for sale on January 3rd, 1911, under the power of sale contained in the mortgage. Mr. Sowers tendered him the amount due on the mortgage, including costs, &c., paid the amount ($4,944.71) into Court and obtained an injunction to prevent him from selling the property. The Court having refused to dissolve that injunction, an appeal was taken to this Court, when the decree of the lower Court was affirmed, as shown in the case of *Wingert* v. *Brewer,* 116 Md. 518. That case and the one asking for specific performance were consolidated by order of the Circuit Court for Washington County, and on the 12th day

of February, 1912, a decree was passed by which it was decreed:

*First*—That Sowers pay the Clerk of the Court within fifteen days from the date of the decree $5,555.29—that being the difference between the $12,000 and the two sums paid into Court by him.

*Second*—That Brewer and wife within five days after payment of said sum into Court make and deliver a deed for the farm.

*Third*—That Wingert, assignee, be perpetually enjoined from selling, etc., the farm under the mortgage.

*Fourth*—That the clerk pay Harvey B. Brewer, upon the execution and delivery of the deed, the sum of $1,500 paid the clerk by Sowers, and the $5,555.29.

*Fifth*—That Sowers be subrogated to the rights of Cost and of Wingert, assignee, in the mortgage.

*Sixth*—That the clerk pay said Wingert, assignee, upon his request the $4,944.71, in satisfaction of the mortgage, costs, etc.

*Seventh*—That Brewer and wife pay the costs in the specific performance case and Wingert, assignee, pay them in the other case.

From that decree Brewer and wife appealed, and Sowers entered a cross-appeal, especially from the first and fourth paragraphs. We will first consider the appeal of Mr. and Mrs. Brewer.

1. It is contended for them that Sowers is not entitled to specific performance because he did not pay, or offer to pay, the purchase money as required by the agreement, relying on the provision that "If at the expiration of the time above mentioned the terms as set forth have not been complied with, then this option shall be considered as null and void." There can be no difficulty about the question. Sowers not only notified Brewer of his acceptance of the option before November 1st, 1910, but he did everything that could be required of him in his effort to pay the $1,500 to Brewer, and, failing to find him, paid that sum into Court on November 1st.

The opinion in 116 Maryland sufficiently shows our views as to his right to pay off the mortgage, to avoid the necessity of further comment on that, and as to the balance of the purchase money due on or before April 1st, 1911, the suit for specific performance was then pending, the defendants were resisting the performance of the contract in every possible way, and Sowers was not only willing to perform it himself, but was at the very time the money was to have been paid asking the aid of the Court to require Brewer and his wife to accept it and to perform their part of the contract. To deny Sowers relief under such circumstances on the ground that the balance of the purchase money was not actually paid by the time named in the agreement, would not only be without precedent, but contrary to every principle of justice and equity which are supposed to control Courts of Equity. Over half of the money was actually paid into Court before the 1st day of April, 1911, and while the amount to redeem the mortgage was not to be paid to Brewer, it was to be paid for his benefit, and it was necessary to be paid in order that the property could be conveyed "free and discharged of all liens and incumbrances of every character and description whatsoever," as the agreement required. We held in 116 Maryland that if the option was valid Sowers had the right to pay off the mortgage in order to protect his interest in the property, and if it was necessary to prove Brewer's connection with the attempt to sell the property under the mortgage, which it is not, it would be difficult to escape the conviction that the sale was in reality attempted in what was supposed to be for his interest. The mortgage was assigned to his attorney for the purpose of foreclosure and collection, and if the only object of the mortgage was to collect his money and if the assignee had no other interest in selling the property, the latter's persistent refusal to accept the money, or even to let Sowers know the precise amount due, can not be accounted for excepting on the theory that it was believed that the sale would deprive Sowers of such rights as he had under the agreement, and that Brewer was interested in and

approving of the course pursued by his attorney. Indeed, it is only just to Mr. Wingert to assume that Brewer approved of his acts, for he would not have been justified in refusing to accept the money and still continue to represent Brewer, unless Brewer was cognizant of and approved of his action in reference to the mortgage. The fact that all of the purchase money was not actually paid on or before April 1st, 1911, can not therefore prevent Sowers from obtaining a decree for specific performance under the circumstances stated above, and others shown by the record which could be mentioned.

2. The agreement purports to have been made for the consideration of one dollar cash in hand, receipt of which is acknowledged, and was executed under the hands and seals of the parties. On cross-examination Sowers testified that he had not paid the dollar, and it was argued that there was no sufficient consideration for the option, and that it made no difference that the option was under seal. Although that is not very material, for reasons we will hereafter state, we can not concede that such is the law. In the absence of fraud, or some inequitable advantage taken by one party over another, Courts do not inquire into the adequacy of the consideration for a promise, but usually leave that to the parties, if it is something of value. As said in *Brantly on Contracts* (2d Ed.), page 88: "There may be a qualitative but not a quantitative analysis of consideration. A stipulation in consideration of one dollar is just as effectual and valuable as a larger sum stipulated for and paid," and on page 331 that author says: "When the agreement giving the option is under seal no other consideration is necessary. It can not be revoked and if exercised will be specifically enforced." In *Hannan* v. *Towers*, 3 H. & J. 147, it was said by KILTY, Chancellor, that (quoting from syllabus): "A consideration may be averred and resorted to without being expressed in the deed; and any consideration, however small, is sufficient in a Court of equity to uphold an agreement." That decision was affirmed by the Court of Appeals and was

also approved in *Stewart* v. *Redditt,* 3 Md. 80; *Whitridge* v. *Barry,* 42 Md. 151, and *Drury* v. *Briscoe, Ibid.* 163. In *Guyer* v. *Warren,* 175 Ill. 335, *Mier* v. *Hadden,* 148 Mich. 488, and *Cummins* v. *Beavers,* 103 Va. 230, the consideration was $1.00. In the latter case it was also determined that the consideration for an option contract need not be paid at the time of the making thereof.

Of course we do not mean to say that a Court of equity may not refuse to specifically enforce a contract if it is satisfied that the consideration is so inadequate as to indicate that the vendor was imposed on or some undue advantage taken of him. In *Lawson* v. *Mullinix,* 104 Md. 156, the contract price was $3,825.00, and the evidence showed that the property was worth from $4,500.00 to $5,000.00, but in the absence of evidence to show that the owner, who was an old man, was imposed on, we affirmed the decree for specific performance. Earlier cases were there cited to show that mere inadequacy of price is no defense to a bill for specific performance when the contract is fair and voluntary, as parties have the right to make their own contracts. In this case there is not even a suggestion that the sum of $12,000 was not the full value of the property, and hence there could be no possible reason for refusing to enforce the contract on the ground that the consideration *for the option* was only one dollar, especially as it was under seal.

3. But this case does not depend upon the question we have just considered. In *Brantly on Contracts,* page 330, the rule is thus announced: "When the option is given for the purchase of land, if the holder of it duly signifies his purpose to buy, or tenders the price, if that be required, he is entitled to specific performance of the contract, and it is no objection that the original agreement was lacking in mutuality or was not signed by the promisee. When he exercises the option, the agreement becomes binding upon both parties, and either may demand specific performance or sue for damages for a breach of the contract." Or as was said in *Thomas* v. *The G. B. S. Brewing Co.,* 102 Md. 417;

"Whenever, as a general proposition, a contract is from any cause incapable of being enforced against one party, that party will not be permitted to enforce it against the other. Both parties must have a right to compel a specific performance at *the date of the decree,* or neither will have it. *Dixon* v. *Dixon,* 92 Md. 440. Agreements upon condition and options are within the rule, but when the condition has been performed or *the option has been closed* the right of the respective parties to demand specific performance becomes mutual." See also notes to *Cummins* v. *Beaver, supra.* as reported in 1 *Am. & Eng. An. Cases,* 986, and *Mier* v. *Hadden, supra,* reported in 12 *Am. & Eng An. Cases,* 88, where many cases are cited.

In this case the option was exercised by Sowers within the time allowed him, and he did all that could be required of him towards making the payment due on or before November 1st, 1910, as well as endeavoring to pay the balance of the purchase money, as we have held above. After Somers exercised the option and agreed to take the property, there was an implied obligation on him to pay the purchase money, although there was no express provision for him to do so. *Lawson* v. *Mullinix,* 104 Md. 156. Sowers had signed the contract as the purchaser had in that case. In *Engler* v. *Garrett,* 100 Md. 387, the purchaser had not signed the contract, but this Court said that was not necessary even under the Statute of Frauds, which only requires the signature of the party to be charged. Judge Fowler quoted from *Waterman on Sp. Per.,* sec. 201, that "There may be a mutual contract to which both parties have given their assent, though the evidence of such assent may exist in a different form as to the two parties. As to one, it may be verbal, while the other's is expressed by his signature in writing." It was held that even in such a case the plaintiff was entitled to specific performance. Sowers could not, therefore, have been deprived of relief on the ground of want of consideration for the option, or want of mutuality in the contract.

4. The only other question in connection with the appeal of the Brewers which we need consider is the defense set up by Mrs. Brewer, that she was told by her husband, and believed that it was an agreement to sell a strip of land to the Cumberland Valley Railroad Company. She does not deny her signature affixed to the agreement, which was a printed form, with the consideration, description, etc., written in. She can read and write and went to school until she was 18 years of age, eleven years in all. We at first thought of referring at some length to the facts appearing in the record, which in our judgment conclusively show that there is no merit in this defense, but have concluded not to do so. If Mrs. Brewer's statement be true, her husband (who is the owner of the property, as Mrs. Brewer only had a contingent right of dower in an equity in the farm) perpetrated such a fraud on her as would make his testimony unworthy of credence. But there are so many circumstances and facts which weaken or contradict her testimony, and it is so improbable, that we have no hesitation in holding that she had not overcome the positive testimony of Mr. Sowers and the presumption which arises when a person, who can read and write and is apparently of at least ordinary intelligence, signs a paper which is as clear and free from doubt as this option was. We will, therefore, not discuss the testimony on this point, but will simply announce our conclusion, which is that she must be held to be bound by the terms of the option.

5. We are also of opinion that the learned judge below was right in not allowing the Brewers any interest on the unpaid purchase money. In his opinion it is stated that they are still in possession of the property and we do not understand that to be denied, but in addition to that, they have no one to blame but themselves for not getting the purchase money sooner.

6. The cross-appeal was taken on the theory that Sowers is entitled to interest on the amount paid into Court by him on the mortgage, to which he has been subrogated by the

decree, and on the other amounts he has paid into Court. The rule is thus stated in 36 *Cyc.* 754: "Where there is delay in completion of the contract, compensation may be made to one or the other of the parties by means of the rents and profits, and interest on the price. The general rule is to adjust the rights of the parties so as to give to each as nearly as possible what we would have received if the contract had been performed according to its terms."

If this contract had been carried out according to its terms, Sowers would have paid $1,500 on November 1st, 1910, and $10,500 on or before April 1st, 1911, and would have been put in possession of the property. He would have been entitled to the rents and profits, or the fair rental value from April 1st, 1911. There is nothing in the record to show what the rental value of the property is, and the judge below said in his opinion in discussing the rights of Brewer to interest, that "During the argument of these causes the solicitors for the said Sowers stated that they would not claim any damages by reason of not obtaining possession of said property on April 1st, 1911, and were willing to have such damages take the place and offset such interest. This I consider equitable." Sowers cannot, therefore, complain of the judge not allowing damages, and he could not well have done so without testimony being taken to show what the rental value of the farm was, or what the rents and profits amounted to.

Although the learned judge, as shown by his opinion in the record, gave the case very thorough and careful consideration, and although we approve of his commendable efforts to bring this protracted litigation to an end, as the question was urged before us, we must determine it and have reached the conclusion that interest on the principal of the mortgage ($4,660.00) from the time Sowers paid it into Court (Dec. 30, 1910) until he is put in possession of the farm, should be deducted. If that be not allowed, Brewer will profit by his own wrong, and Sowers as the equitable holder of the mortgage will lose interest on it. If the Brew-

ers had not entered into the contract they would have been required to pay the interest on the mortgage, and they should not be permitted to escape payment of it at Sower's expense. We are of the opinion, therefore, that the decree should be so changed as to provide that interest on the principal of the mortgage from December 30th, 1910, until Sowers is put in possession of the farm should be deducted from said sum of $5,555.29, and paid back to Sowers. If that sum was paid into Court as required by the decree, as we understand it to be said at the argument it had been, we do not intend by what we have said to prevent Sowers from recovering in the proper tribunal rents and profits or the rental value of the farm since said sum was so paid into Court, as we do not understand the waiver of damages by the solicitors for Sowers to have been made for anything after the decree was passed. We are merely reviewing the decree and not what occurred after that time. As Sowers appealed from the decree, as well as the Brewers, it may be that he cannot establish his right to rents and profits, without being liable for interest on the $1,500 and the $5 555.29 from the date of the decree. This litigation has already been expensive to the parties, as it has covered a period of two years, and we would be glad to settle all controversies between them in this decision, if we could properly do so, but we cannot properly determine questions affected by what occurred after the decree, as we do not have the facts properly before us. If any controversy does arise as to the rights of the parties since the date of the decree in the lower Court, the fact that the Brewers and Wingert first appealed, and were pressing their appeal, will have to be considered in connection with Sowers' cross-appeal, as well as who were responsible for the great delay in bringing this case to this Court, as it could have been disposed of at the April Term, and interest thereby saved, if the record had been transmitted as promptly as it could and should have been. As we have now definitely settled the main questions of the case, there can be no possible excuse for the Brewers retaining possession of the farm, and there would seem to be none for further litigation.

Nothing is said in the record about taxes against the farm, but as the agreement provided for the property being conveyed free and clear of all liens and incumbrances, it will be proper to require all taxes, if any, which are against the property to be paid out of this sum. We have no means of knowing whether there are any, but if there are, they can be provided for in the new decree, which the lower Court will pass.

We will direct that the costs below be paid as ordered by the lower Court, and that two-thirds of the costs in this Court be paid by the Brewers and the other third by Henry F. Wingert, assignee. The new decree can also provide for deducting Sowers' costs out of the respective funds as herein directed—that is to say, those which the Brewers are to pay to be deducted from the $5,555.29, and those which Mr. Wingert is to pay out of the fund to be paid him. Of course, whatever is deducted from the several sums already paid into Court which Sowers is entitled to should be paid to him.

It follows that the decree will be affirmed in part and reversed in part, and the cause remanded for further proceedings in accordance with this opinion.

> *Decree affirmed in part and reversed in part and cause remanded for further proceedings in accordance with this opinion, the costs below to be paid as directed by the lower Court, and two-thirds of those in this Court to be paid by Harvey B. Brewer and Annie E. Brewer, and the remaining third by Henry F. Wingert, assignee.*