HYMAN D. CAPLAN *v.* HENRY J. BERKLEY.
[No. 52, October Term, 1934.]

*Decided November 20th, 1934.*

510

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, PARKE, and SLOAN, JJ.

J. Paul Schmidt, for the appellant.

Myer Rosenbush, submitting on brief, for the appellee.

ADKINS, J., delivered the opinion of the Court.

On October 26th, 1933, the appellee sued the appellant for money received by the defendant for the use of the

plaintiff, and on demand for bill of particulars filed an account for rent collected by defendant as agent for plaintiff for premises 327 N. Howard Street amounting to $700, with credit amounting to $205.62, leaving the balance due $494.38. The defendant filed the general issue pleas and, for a third plea, set-off, in the form of the common counts. In response to demand for bill of particulars of the claim of set-off, defendant filed the following:

"The defendant, Hyman D. Caplan, by J. Paul Schmidt, his attorney, in answer to the plaintiff's demand for the particulars of the defendant's claim of set-off, as set forth in counts one, two, three, four, five and six of the defendant's third plea, that the particulars of his claim of set-off as set forth in his third plea and in every count thereof are as follows:

"On or about June 20th, 1933, the plaintiff, Henry J. Berkley, agreed with the defendant, in writing, under seal, for a valuable consideration, to enter into an agreement for the sale by the plaintiff to the defendant of the property No. 327 North Howard Street, subject to an annual ground rent of Four Hundred ($400.00) Dollars at and for the price of Fifteen Thousand ($15,-000.00) Dollars, at any time during the period from the date of said agreement until June 20, 1935, in terms, form and manner as follows:

"Baltimore, Maryland, June 20th, 1933.
"Mr. Hyman D. Caplan, Munsey Building,
    Baltimore, Md.

"Dear Mr. Caplan: In consideration of One Dollar and other valuable considerations (receipt of which I acknowledge), I do hereby agree that I will, at any time at your request, before and not later than June 20, 1935, upon your executing and delivering to me the agreement appearing on the opposite side hereof execute and deliver to you a copy of said agreement.

"I also agree to allow you the usual brokerage commission from the purchase price.

"Very truly yours,

"[Signed] Henry J. Berkley.   [Seal.]

"Witness:

"[Signed] Erwin Ira Ulman.

"And on the opposite side of the paper upon which the above agreement was written is the following unexecuted contract of sale:

"This Agreement, Made this ———— day of ———— Ninteen hundred and thirty ———— between Henry J. Berkley, party of the first part and Vendor: and Hyman D. Caplan, party of the second part, and Vendee.

"Witnesseth, that the said party of the first part doth hereby bargain and sell unto the said party of the second part, and the latter doth hereby purchase from the former the following described property, situate and lying in Baltimore City and known as No. 327 North Howard Street, subject to an annual rent of $400.00, at and for the price of Fifteen Thousand ($15,000.-00) Dollars to be paid as follows, to wit, in cash within, and not later than, thirty days from the date hereof.

"And upon payment as above of the unpaid purchase money, a deed for the property shall be executed at the vendee's expense by the vendor, which shall convey the proprty by a good and merchantable title to the vendee.

"Taxes, water rent, ground rent, etc., to be paid or allowed for by the Vendor to date of settlement.

"Time is the essence of this contract.

"Witness our hands and seals

"Test:————————[Seal]

  "   ————————[Seal]

  "   ————————[Seal]

  "   ————————[Seal]

"That on or about October 18, 1933, the plaintiff, the said Henry J. Berkley, did sell, grant, and convey the said property, No. 327 North Howard Street, to one Morton Hamburger. That on or about November 7, 1933, the defendant accepted said offer of the plaintiff and agreed to purchase and pay for said property, No. 327 North Howard Street, and although the defendant has been ready and willing at all times to carry out and perform his part of said contract, the plaintiff has failed and refused and still refuses to sell and convey said property to the defendant.

"J. Paul Schmidt,

"Attorney for defendant."

Plaintiff joined issue on the general issue pleas and traversed the third plea. At the trial, plaintiff offered a letter from his attorney to the defendant, dated October 20th, 1933, in which defendant is informed of the sale and conveyance of the property by plaintiff, and is requested to mail plaintiff a statement of receipts and disbursements as agent, together with a check for balance due from collections. Plaintiff also offered a letter from the attorney of defendant to attorney for plaintiff, dated October 21st, 1933, acknowledging receipt of the first mentioned letter and giving a statement of the collection account, showing a balance due plaintiff on that account of $494.38, but stating that defendant refused to pay that balance "for the reason that Dr. Berkley is indebted to him for a sum far in excess of this amount for breach of contract, for which breach of contract suit has been this day instituted in the Superior Court of Baltimore City." Defendant acknowledged receipt of the first letter and his authorization of the second. Dr. Berkley testified in chief that the balance of the rent account had not been paid, that he did not owe defendant anything, and so far as he knew there was no counterclaim. It appears that the suit instituted by defendant, referred to in his attorney's letter, was dismissed. The defendant offered in evidence

the form of agreement with the letter of plaintiff to defendant on the back of the contract form, which was filed as part of defendant's bill of particulars; also a letter from defendant to plaintiff dated November 7th, 1933, stating that:

"This is to advise you that I now accept the option to purchase the property No. 327 North Howard Street, at the price of $15,000.00, and I am ready and willing to sign the contract for the purchase of said property in the form referred to in our agreement of June 20, 1933."

The defendant testified that at the request of plaintiff he procured a loan of $6,500 on first mortgage of the Howard Street property which proved not to be enough to take care of taxes due by plaintiff, and plaintiff asked defendant if he would not buy the property at $15,000; that defendant said he was not in a position to do so at once, but if plaintiff would give him an option he might be able to arrange it later; that plaintiff said there was not time for that as he had to have the money to pay taxes; that plaintiff said if defendant would arrange for plaintiff a loan of $1,500 on second mortgage, he would give him an option at $15,000; that he did procure this loan on second mortgage on the same day the option was given. It is apparent from the record that whatever services were to be performed by the defendant in connection with the procurement of these loans had been performed at the time the alleged option was given. It is the contention of defendendant that the procurement of this loan on second mortgage was a part of the consideration for the alleged option, although he admits that he was to be paid, and was paid, brokers' commissions for obtaining the loan. Plaintiff denies that the loan was procured on his promise to give an option, or on any other consideration than commissions, and says the matter of the option was taken up after the loan had been procured.

The uncontradicted testimony is that the one dollar consideration mentioned in the letter of June 20th, 1933, was never paid. There is a conflict of testimony as to

whether the word "seal," which appears on the paper as offered by defendant, was there at the time it was delivered to defendant and as to whether it was put there with plaintiff's knowledge and consent. The weight of the testimony supports the claim of plaintiff that it was not. At the conclusion of the testimony the trial court granted plaintiff's prayer and refused the two prayers offered by the defendant. The verdict was for the plaintiff, and judgment was entered thereon, from which this appeal was taken.

There was one exception reserved to a ruling on evidence, and one to the ruling on the prayers.

We find no reversible error in either of these rulings.

The question, the objection to which was overruled and the ruling excepted to, was:

"Now, these commissions, Doctor, will you tell his Honor and the gentlemen of the jury, what arrangement you had about the compensation Mr. Caplan was to get?" On the objection being overruled, the question was repeated in another form as follows: "Now, then, Doctor, will you tell his Honor and the gentlemen of the jury, what arrangement about compensation you made with Mr. Caplan for securing this loan or these loans?" Answer: "Mr. Caplan was to secure the loan and payment of commission thereon." We do not see how defendant could validly object to the question, as one of his contentions is that the procuring of this loan was the real consideration for the giving of the option. Certainly the plaintiff had the right to prove, if he could, that commission, and not the option, was the consideration for procuring the loan. A number of other questions followed which were not objected to.

The only question in this case was whether the alleged contract for an option was enforceable. Plaintiff's prayer submitted to the jury to find: Whether the paper writing offered in evidence was delivered by plaintiff to defendant without any consideration passing from defendant to plaintiff. Whether the word "seal" was written thereon at the time of such delivery or with the knowledge or con-

sent of the plaintiff. And the jury was instructed if it found that consideration did not pass, and that "seal" was not written thereon at the time of delivery or with the knowledge and consent of the plaintiff, the defendant was not entitled to recover on his claim of set-off. The prayer was probably incorrect in form, in fixing by implication the time of the delivery of the paper writing as the only time when the consideration might pass. But that error was not prejudicial, as it appears from the record that the one dollar was never paid or tendered, and that, if the procuring of the loan on second mortgage was the consideration, that consideration had passed at the time the paper writing was delivered.

The prayer submitted to the jury the only questions in controversy (if the payment of the one dollar was in controversy). And the prayer was correct as a proposition of law, except as above indicated.

We think the defendant in his argument and in his citation of authorities confuses the question of validity with that of enforceability at the time of suit. He argues that evidence could not properly be given of nonpayment of the consideration for the purpose of destroying the instrument. And he cites authority in support of that proposition. It does not follow, however, that, assuming it was a valid contract, it was enforceable at the time suit was brought. No citation of authority is necessary to support the proposition that where the consideration entirely fails, the party in default cannot recover at law against the other party. See *Anson, Law of Contract,* page 304. And the facts necessary to determine that question were submitted to the jury by plaintiff's prayer, and without any ambiguity. If the consideration named had been $500 instead of one dollar, it would hardly be contended that the party bound to pay the $500, as long as it remained unpaid, and without tender of payment, could sue the other party at law for a refusal to perform his part of the contract.

There is no merit in defendant's contention that the defendant's position was improved by his alleged exercise

of the option. So far as the record shows, defendant had given no intimation of his intention to exercise the option until after he was informed by plaintiff that he had sold the property. He was informed by letter on October 20th, 1933, that the property had been sold and was requested to make settlement for the rents collected by him as agent. Very promptly the next day, he, through his attorney, informed plaintiff that he was suing him for breach of contract. But it was not until November 7th, 1933, that he advised plaintiff "that I now accept the option to purchase the property," after he learned the property had been sold, and could not be delivered.

We are not impressed with any equities existing in favor of defendant. The argument of defendant that, even if there was no consideration for the contract when made, it became a valid contract when the offer was accepted, has no force, because if the contract as made was not enforceable, plaintiff had the right to withdraw the offer at any time before it was accepted, and this he did. Therein this case differs from *Brewer v. Sowers*, 118 Md. 681, 86 A. 228, on which defendant strongly relies. The decision in that case was rested on the fact that the option was exercised before the offer was withdrawn, and the other questions discussed were said by the court not to be material. Other cases cited by defendant are not in point in reference to the facts of this case. They are mostly suits for specific performance where equitable considerations prevailed.

Defendant's first prayer was bad for at least one good and sufficient reason. It excludes from the consideration of the jury the question as to whether or not there was a total failure of consideration.

It is not necessary to discuss defendant's second prayer. It was predicated upon the finding of a verdict for the defendant, and the verdict was for the plaintiff, so in any event, there was no prejudicial error.

*Judgment affirmed, with costs to appellee.*